## STATEWIDE GRIEVANCE COMMITTEE *v.*
## M. DANIEL FRIEDLAND
## (14136)

PETERS, C. J., CALLAHAN, GLASS, BORDEN and BERDON, Js.

Argued December 11, 1991—decision released May 19, 1992

*Norman E. Whitney,* with whom, on the brief, was *M. Daniel Friedland,* pro se, the appellant (defendant).

*Elizabeth F. Collins,* assistant bar counsel, for the appellee (plaintiff).

GLASS, J. The plaintiff, the statewide grievance committee, instituted this action by presentment in four counts against the defendant, M. Daniel Friedland, alleging that he had committed professional miscon-

duct in the representation of four clients. After a hearing, the trial court found the defendant guilty on all counts and ordered that he be permanently disbarred from the practice of law in Connecticut. Thereafter, the defendant filed a motion to reconsider, open and set aside the judgment. After a second hearing, at which the defendant appeared and presented evidence, the trial court denied his motion.[1] The defendant appealed to the Appellate Court and we transferred the appeal to this court pursuant to Practice Book § 4023.

On appeal, the defendant claims that: (1) the committee failed to present clear and convincing evidence to support the discipline imposed by the trial court; (2) the trial court abused its discretion in failing to grant the defendant a continuance; (3) the defendant was denied effective assistance of counsel; and (4) the trial judge should have recused himself from this action. We affirm the judgment of the trial court.

The defendant was admitted to practice in Connecticut on May 13, 1983. On March 2, 1990, the committee filed the presentment that is the subject of this appeal in the Superior Court at Hartford. The presentment was served on the defendant on March 8, 1990, notifying him that a hearing was scheduled for April 10, 1990. The defendant's attorney appeared at the April 10 hearing and requested a continuance on the defendant's behalf, which the trial court denied. We shall set forth the remaining facts as they relate to each of the defendant's four claims.

---

[1] The defendant also filed a motion for articulation and correction of the record for appeal, which he subsequently amended. The trial court granted the defendant's amended motion with respect to his request that the record include the transcript of a hearing concerning a prior presentment held on November 3, 1989, before the Honorable Norris L. O'Neill in the Superior Court at Hartford.

## I

The defendant first claims that the committee failed to present clear and convincing evidence of professional misconduct that would support the discipline imposed by the trial court. In addressing this claim, we set forth the evidence presented at the April 10, 1990 hearing separately as it relates to each count of the presentment.

## A

### COUNT I – PATRICK WADE

On or about March 2, 1988, the United States Immigration and Naturalization Service (INS) brought a deportation proceeding against Patrick Wade, a permanent resident of the United States and a native and citizen of Jamaica. The testimony of Wade and *David* Zitzkat established the following facts. Wade retained the defendant and paid him $4000 to represent him in the deportation proceeding. A series of hearings was held by the INS regarding Wade's deportation. The defendant was unprepared at the first hearing and failed to explain to Wade what had transpired at the second hearing. Wade had to "assume" that the defendant was working on his case. A final hearing on Wade's deportation was scheduled for April 13, 1989, at which neither the defendant nor Wade appeared. According to Wade, the defendant had misinformed him about the hearing date. In Wade's absence, the INS issued an order of deportation against him. On April 19, 1989, the defendant appealed the deportation order to the Board of Immigration Appeals. Thereafter, Wade retained Zitzkat to represent him. At Zitzkat's request, Wade obtained his file from the defendant. The file contained a notice from the INS dated December 22, 1988, referring to Wade and addressed to M. *David* Friedland, which stated in relevant part: "Please take notice

that the above captioned case will be heard by an Immigration Judge on April 13, 1989 @ 4:00 PM at the office of the Immigration Judge . . . ." The notice stated further: "Since you are the attorney/representative of record, this will be the only notice of this hearing issued. The office of the Immigration Judge will not notify your client." The file also contained an appeal form and an affidavit dated April 19, 1989, regarding Wade's case. The appeal papers, which were signed by the defendant, represented that the only notice of any proceedings that the defendant or Wade had received had been a letter sent to Wade requesting that he appear before the INS on April *19*, 1989.

## B

### COUNT II – FRANCIS NKWO

Francis Nkwo[2] testified to the following facts. In October, 1988, Nkwo paid the defendant $750 to assist him in obtaining legal resident status through the INS amnesty program. In the subsequent months, the defendant failed to keep appointments that he had scheduled with Nkwo. In addition, Nkwo was unable to contact the defendant by telephone and for at least one month the defendant's telephone number was not in service. The defendant failed materially to assist Nkwo with his immigration case and did not return any of the money Nkwo had paid him.

## C

### COUNT III – MARIE BEAUVOIS

Marie Beauvois testified as follows. In August, 1988, Beauvois retained the defendant and paid him $500 to represent her in a dissolution action. The defendant failed to obtain any pertinent information from Beauvois regarding her marriage. Beauvois called the

---

[2] Although this spelling appears in the transcript of the April 10, 1990 hearing, the witness' name appears as "Okonkwo" in the record and briefs.

defendant regularly for several months but he never returned her calls. In addition, the defendant did not keep appointments that he had scheduled with Beauvois. Beauvois saw the defendant on only two occasions, first, when she retained him and paid the $500, and once thereafter when she did not have an appointment. The defendant did not return any of the money Beauvois had paid for his services. Beauvois ultimately retained another lawyer to represent her in the dissolution action.

### D

#### COUNT IV – JOSHUA ELNISTON

Joshua Elniston[3] testified as follows. In January, 1988, Elniston retained the defendant to represent him in a workers' compensation case. Elniston paid the defendant a total of approximately $600. The last time Elniston saw the defendant was on March 16, 1989, when he paid the defendant $300. A hearing was scheduled on Elniston's claim for June 12, 1989. Prior to the hearing date, Elniston called the defendant repeatedly at his office and at home but was unsuccessful in contacting him. The defendant neither called nor wrote to Elniston before the hearing date. Ultimately, another attorney was appointed to represent Elniston.[4]

We have held that clear and convincing evidence is the proper standard of proof in attorney disciplinary proceedings. *Statewide Grievance Committee* v. *Presnick*, 215 Conn. 162, 171–72, 575 A.2d 210 (1990). The defendant argues that the evidence presented by the committee at the April 10, 1990 hearing failed to satisfy this standard. We disagree.

---

[3] This witness' name also appears as "Elmistun" in the transcript of the April 10, 1990 hearing and as "Elliston" in the parties' briefs.

[4] Elniston's claim was still pending at the time of the April 10, 1990 hearing.

In the presentment, the committee alleged that the defendant was guilty of misconduct not occurring in the actual presence of the court, involving his character, integrity and professional standing and conduct. Specifically, the committee alleged that the defendant had violated the following Rules of Professional Conduct: (a) rule 1.1 with respect to Wade and Elniston; (b) rule 1.3 with respect to Wade, Beauvois and Elniston; (c) rule 1.4 with respect to Nkwo, Beauvois and Elniston; and (d) rule 3.3 with respect to Wade.[5]

---

[5] Rule 1.1 of the Rules of Professional Conduct provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

Rule 1.3 of the Rules of Professional Conduct provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

Rule 1.4 of the Rules of Professional Conduct provides: "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

"(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

Rule 3.3 of the Rules of Professional Conduct provides: "(a) A lawyer shall not knowingly:

"(1) Make a false statement of material fact or law to a tribunal;

"(2) Fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

"(3) Fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

"(4) Offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

"(b) The duties stated in paragraph (a) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

"(c) A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

"(d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse."

Rule 1.1 requires that an attorney provide a client with "competent representation," which includes the "thoroughness" and "preparation" reasonably necessary to the representation. Wade testified that the defendant had been unprepared for Wade's first deportation hearing. In addition, the defendant failed to appear or to notify Wade to appear at the April 13, 1989 hearing, which resulted in the entry of an order of deportation against Wade. The defendant also failed to prepare for or appear at the hearing on Elniston's workers' compensation claim. As a result of the defendant's failure, another lawyer was appointed to represent Elniston. On the basis of the foregoing testimony, the trial court could reasonably have concluded that there was clear and convincing evidence that the defendant had violated rule 1.1.

Pursuant to rule 1.3, a lawyer must "act with reasonable diligence and promptness in representing a client." Zitzkat testified that the defendant's file on Wade contained a notice from the INS dated December 22, 1988, regarding Wade's April 13, 1989 deportation hearing. Although the notice was incorrectly addressed to M. *David* Friedland, it was sent to the defendant's business address and contained sufficient information to alert the defendant that Wade's case was scheduled for a hearing on April 13, 1989.[6] The defendant failed to act with reasonable diligence and promptness in responding to the notice, which resulted in the entry of a deportation order against Wade. Beauvois testified that the defendant failed to obtain any relevant information from her regarding her marriage. The defendant's lack of diligence in representing Beauvois

---

[6] In his brief on appeal, the defendant claims that Wade informed him that the hearing was scheduled for April 19, 1989. He claims further that he did not receive the December 22, 1988 notice until after April 19, 1989, when he requested Wade's file from the INS. Because we conclude that the defendant knowingly forfeited the opportunity to testify at the April 10, 1990 hearing; see part II infra; we decline to address these claims on appeal.

led her to retain another lawyer. Finally, Elniston testified that the defendant provided no assistance in preparing for a hearing on his workers' compensation claim. The trial court could reasonably have concluded from the foregoing testimony that there was clear and convincing evidence that the defendant had violated rule 1.3.

In accordance with rule 1.4, a lawyer "shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." In addition, the rule provides that a lawyer "shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Nkwo, Beauvois and Elniston testified that the defendant had failed to keep them informed about the status of their cases. The defendant failed to keep appointments or otherwise reasonably communicate with Nkwo and Beauvois. Moreover, he did not respond to efforts by Nkwo, Beauvois and Elniston to contact him and, for a period of time, did not even maintain a working telephone number. The trial court could reasonably have concluded that the testimony of Nkwo, Beauvois and Elniston established by clear and convincing evidence that the defendant had violated rule 1.4.

The committee also alleged that the defendant had violated rule 3.3 with respect to his representation of Wade. Rule 3.3 (a) (1) provides that "[a] lawyer shall not knowingly . . . [m]ake a false statement of material fact or law to a tribunal." When Zitzkat received Wade's file from the defendant, he discovered the December 22, 1988 notice from the INS notifying the defendant that Wade's deportation hearing was scheduled for April 13, 1989. The notice stated that this would be the only notification of the hearing that either the defendant or Wade would receive. In the appeal papers that the defendant filed with the Board of

Immigration Appeals on Wade's behalf, however, the defendant stated that the only notice of any proceedings had been a letter sent to Wade requesting that he appear before the INS on April *19,* 1989.[7] Relying on Zitzkat's testimony and the documents in the defendant's file on Wade, which were admitted as exhibits at the April 10, 1990 hearing, the trial court could reasonably have concluded that the defendant had made a false statement of material fact to a tribunal in violation of rule 3.3.

In addition to the testimony of Wade, Nkwo, Beauvois and Elniston, the committee presented evidence, which the defendant has not disputed, that the defendant had previously been disbarred in another state.[8] The trial court had the unique opportunity to assess the evidence presented in light of all the circumstances, including the demeanor and conduct of the witnesses. See *Kaplan* v. *Kaplan,* 186 Conn. 387, 391, 441 A.2d 629 (1982). Our review on appeal is limited to a determination of whether the trial court's assessment of the evidence was clearly erroneous. Id., 391–92. We are persuaded that the trial court could reasonably have concluded that there was clear and convincing evidence that the defendant had engaged in professional misconduct as alleged in the presentment.

## II

The defendant next claims that the trial court abused its discretion in denying his request for a continuance. The defendant argues that he was unprepared for trial

[7] Zitzkat initially filed an appeal on Wade's behalf representing the same facts. After discovering the December 22, 1988 notice in the defendant's file, however, Zitzkat amended Wade's appeal to state that the defendant had in fact received notice of the April 13, 1989 hearing. Zitzkat included a claim of ineffective assistance of counsel in the amended appeal.

[8] At the April 10, 1990 hearing, the committee's attorney initially stated that the defendant had been disbarred in Illinois in 1982, but other references in the transcript and briefs are to Indiana.

on April 10, 1990, because in a prior presentment against him, the committee's attorney had treated the first hearing as a status conference. The committee contends that one attorney's handling of the earlier presentment was not binding on it and that the defendant had been notified prior to April 10, 1990, that the committee planned to "go forward" on that date. We conclude that the trial court acted within its discretion in denying the defendant's request for a continuance.

At the April 10 hearing, the defendant's attorney, Norman Whitney, requested a continuance on the defendant's behalf. Whitney informed the court that the defendant, who was living in Florida, had called him the previous day and had asked him to attend the hearing to ask for a continuance. Whitney acknowledged that the defendant had been notified of the hearing date when he was served with the presentment on March 8, 1990, and had since been informed by the committee's attorney, Darlene Reynolds, that she was "going forward" with the presentment. Whitney told the court that on the basis of the defendant's previous experience with the committee, the defendant had interpreted the term "going forward" to mean a status conference and not an evidentiary hearing.[9]

---

[9] Whitney also represented to the court that the defendant "[did not] have a dime" to pay for traveling to Connecticut and that the defendant's wife had been in the hospital "the day before." At the hearing on the defendant's motion to open on May 29, 1990, the defendant testified that his wife had been placed in a rehabilitation program after the prior presentment and that he had communicated that fact to Reynolds. Reynolds testified, however, that she did not recall any conversations with the defendant regarding his wife's health prior to the April 10, 1990 hearing. The defendant requested the trial court's permission at the May 29 hearing to document his wife's medical problems. The court ruled that, even assuming evidence of the defendant's wife's medical condition as of April 10, he was incorrect, nevertheless, in assuming that April 10 was to be only a scheduling date and status conference. The transcript reveals that the court did not deny the defendant's motion to open the judgment on the basis of insufficiency of evidence concerning the wife's medical problems. Accordingly, we conclude that the trial court did not abuse its discretion in denying the motion to open the judgment.

At the May 29, 1990 hearing on the defendant's motion to open, the defendant presented evidence regarding his communications with the committee prior to the April 10 hearing date.[10] The defendant called Christine Whitehead, the attorney who had tried the prior presentment on behalf of the committee. Whitehead testified that when she was handling the first presentment, she had informed the defendant that it was her practice to treat the first court appearance as a status conference. She testified that she usually followed this practice because of the volume of cases in Hartford but could not represent how other attorneys for the committee handled presentments.

The defendant also called Reynolds, who testified as follows. On March 8, 1990, when the defendant was served with the presentment, he had indicated to Reynolds that he would not be able to attend the April 10 hearing for financial reasons and asked if she would consider agreeing to factual stipulations. On March 23, Reynolds contacted the defendant by telephone in Florida to discuss relevant factual stipulations, but they were unable to agree on any. At that time, Reynolds informed the defendant that she planned to "go forward" with the hearing on April 10. The defendant again told Reynolds that he could not afford to attend the hearing. After the defendant referred to how Whitehead had handled the prior presentment, Reynolds told him that she did not intend to continue this matter. On April 9, the defendant telephoned Reynolds to ask about the status of the case. When Reynolds informed him that the hearing was scheduled

[10] The defendant claimed for the first time at the May 29 hearing that the trial court should have granted him a continuance because April 10 was a major Jewish holiday. Reynolds testified that the defendant had made no reference to the holiday in a telephone conversation they had on April 9, 1990. Because the defendant's attorney did not raise this claim at the April 10 hearing, the trial court acted within its discretion in denying this basis for opening the judgment.

for the following day, the defendant reiterated that he could not afford to attend and suggested that she ask for a continuance. Reynolds told the defendant that she did not intend to request a continuance.

" 'A motion for continuance is addressed to the discretion of the trial court, and its ruling will not be overturned absent a showing of a clear abuse of that discretion.' . . . *We are especially hesitant to find an abuse of discretion where the court has denied a motion for continuance made on the day of trial. . . .* 'Every reasonable presumption in favor of the proper exercise of the trial court's discretion will be made.' " (Emphasis added; citations omitted.) *Thode* v. *Thode,* 190 Conn. 694, 697, 462 A.2d 4 (1983). Because there is no "mechanical" test for determining whether the denial of a continuance constitutes an abuse of discretion, we must consider the particular circumstances of each case, paying special attention to the reasons presented to the trial court at the time the request was denied. *State* v. *Beckenbach,* 198 Conn. 43, 47–48, 501 A.2d 752 (1985); *Ridgeway* v. *Ridgeway,* 180 Conn. 533, 539, 429 A.2d 801 (1980).

The principal reason presented by Whitney in support of the defendant's request for a continuance was that the defendant had relied on the procedure followed in the prior presentment, and therefore expected the April 10 hearing to be a status conference only. We have stated that a defendant does not have an "absolute" right to a continuance. *State* v. *Beckenbach,* supra, 47; *State* v. *Bethea,* 167 Conn. 80, 83, 355 A.2d 6 (1974). In the present case, despite his receipt of timely notice of the hearing and the fact that Reynolds had told him nearly three weeks earlier that she did not intend to follow Whitehead's practice and that she would be "going forward" on the scheduled date, the defendant argues that he reasonably relied on the procedure followed by Whitehead in the prior presentment. The trial

court concluded, however, that as an experienced attorney, the defendant could reasonably be expected to understand that "going forward" meant a trial or evidentiary hearing.[11] We agree. Accordingly, we are persuaded that the trial court acted within its discretion in denying the defendant's request for a continuance.

## III

The defendant also claims that he was denied his constitutional right to effective assistance of counsel. Specifically, the defendant claims that Whitney provided ineffective assistance at the April 10, 1990 hearing in that he allowed the trial judge to set the pace of the proceedings, failed to review relevant files, failed to

[11] During argument on the defendant's request for a continuance, the following colloquy took place:

"The Court: What were the exact words you used?

"Ms. Reynolds: Attorney Friedland was told that the Statewide Grievance Committee was prepared to go forward on this date. There was no indication of any misunderstanding of what the term going forward meant. I would suggest that there is no ambiguity in the term going forward. Any understanding or any agreement that Attorney Friedland had with another Attorney on another matter, I would suggest, does not have any relevance to this proceeding today.

"Attorney Friedland was properly served over four weeks ago. And he did indicate four weeks ago that he did not plan on attending for financial reasons.

"Mr. Whitney: Might I add one thing, Your Honor?

"The Court: Sure.

"Mr. Whitney: The going forward is something a Judge can rule upon. But, Mr. Friedland—and the record before Judge Norris O'Neill will show that [he] never had any arrangement with Christine Whitehead as to procedure—he wanted to try it. He was not allowed to. He thought, this is exactly the same thing.

"The Court: But he was told. I mean, any lawyer, in my experience knows that going forward doesn't mean entering a plea. I mean, going forward to me always meant to me only one thing, the trial would proceed or the evidence would be taken. That's what going forward means to anybody who has ever been in a Court. I would think—Mr. Friedland is not a babe in the woods here. He knows what going to Court and what going forward means, as I am sure you do."

call witnesses or to present evidence, and failed to raise the claim that April 10 was a major Jewish holiday in support of the defendant's request for a continuance.[12] The committee argues that the defendant's claim is not properly before this court because the right to effective assistance of counsel attaches only in criminal proceedings.

Pursuant to the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution, a defendant in a *criminal* proceeding has the right to the assistance of counsel.[13] We have held that defendants in certain *civil* proceedings also have a constitutional right to the assistance of counsel. See *Lavertue* v. *Niman,* 196 Conn. 403, 412, 493 A.2d 213 (1985) (indigent defendants in state-supported paternity actions have a right, under both the federal and state constitutions, to court-appointed counsel at state expense). The right to counsel necessarily implies a right to the effective assistance of such counsel. See *State* v. *Anonymous,* 179 Conn. 155, 159, 425 A.2d 939 (1979) (right to effective assistance of counsel is implicit in statute mandating the assistance of counsel in proceedings for the termination of parental rights). "The proceeding to disbar [or suspend] an attorney is neither a civil action nor a criminal proceeding, but is a proceeding sui generis, the object of which is not the punishment of the offender, but the protection of the court. . . ." (Cita-

---

[12] We note that despite this claim, the defendant retained the same attorney to represent him in this appeal.

[13] The sixth amendment to the United States constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." In *Gideon* v. *Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), the United States Supreme Court held this right applicable to the states through the fourteenth amendment to the United States constitution.

Article first, § 8, of the Connecticut constitution provides in pertinent part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . ."

tions omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Rozbicki,* 219 Conn. 473, 483, 595 A.2d 819 (1991), cert. denied,    U.S.   , 112 S. Ct. 1170, 117 L. Ed. 2d 416 (1992). The defendant has cited no authority in support of his argument that an attorney in a disciplinary proceeding has a constitutional right to the effective assistance of counsel. Because we discern no special circumstances in this case that would warrant departure from the general rule that civil proceedings ordinarily do not give rise to a right to counsel, we decline to address the merits of the defendant's claim.

## IV

The defendant's final claim is that the trial judge should have recused himself from this action. The defendant contends that the judge, the Honorable Samuel Freed, had a personal bias against him as a result of having presided over previous matters involving the defendant.[14] In support of his claim, the defendant cites certain comments made by Judge Freed at the April 10, 1990 hearing.[15] The defendant argues,

[14] In his brief, the defendant refers to two matters: (1) an ex parte restraining order against the defendant brought by his wife before Judge Freed in May, 1988; and (2) a judgment debtor proceeding in December, 1988.

[15] After Whitney represented to the trial court that the defendant's wife had been in the hospital; see footnote 9, supra; the following colloquy transpired:

"The Court: His wife? Which wife is that?

"Mr. Whitney: Dan Friedland's.

"The Court: Wasn't he divorced recently?

"Mr. Whitney: No. He is married.

"The Court: I was sitting when he was getting a divorce.

"Mr. Whitney: Well, she's been married to him for at least seven years.

"The Court: They're re-united?

"Mr. Whitney: No. It's been seven years is all I can tell you.

"The Court: I think I know a little bit about the case because I sat and heard part of it. So I know what you say is not quite the whole story.

"Mr. Whitney: What's that? I certainly haven't misrepresented.

"The Court: About his marriage, that she's some sort of an alcoholic?

therefore, that Judge Freed should have recused himself in accordance with canon 3 (C) (1) (a) of the Code of Judicial Conduct.[16] The committee argues that the defendant's claim of judicial bias was not properly preserved and, therefore, this court should decline to address it. We agree with the committee.

The defendant did not properly preserve his claim of judicial bias because he failed to move for disqualification of Judge Freed at the April 10, 1990 hearing. "As a general rule, even in cases alleging judicial bias, this court will not consider the issue on appeal where the party failed to make the proper motion for disqualification at trial. . . . Failure to request recusal

"Mr. Whitney: This is not the wife from whom he was divorced. This is [a] present bona fide living marriage according to the laws of the State.

"The Court: How long has he been married to this woman?

"Mr. Whitney: I would say seven years, off the top of my head. They have a son, five. At any rate, his ability to be here is absolutely null.

"The Court: I was sitting in the family court, 1987, I believe.

"Mr. Whitney: Your recollection is correct to the degree that that present wife—they were squabbling over temporary custody of a child in Massachusetts.

"The Court: Is this the same woman he is married to?

"Mr. Whitney: Same woman.

"The Court: So that divorce was never finished?

"Mr. Whitney: There was never any entry of a claim for divorce. There was no complaint for a divorce. There was a familial problem through Family Services over a child in Massachusetts.

"The Court: There was an application, because I remember I granted it, for a temporary restraining order in that case.

"Mr. Whitney: There was a temporary restraining order granted.

"The Court: That's of no great moment here. But that's the same wife he is married to?

"Mr. Whitney: Yes."

[16] Canon 3 (C) (1) (a) of the Code of Judicial Conduct provides: "C. Disqualification.

"(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned including but not limited to instances where:

"(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

or move for a mistrial can be construed as the functional equivalent of consenting to the judge's presiding over the trial." (Citations omitted; internal quotation marks omitted.) *Lo Sacco* v. *Young*, 20 Conn. App. 6, 8–9, 564 A.2d 610, cert. denied, 213 Conn. 808, 568 A.2d 793 (1989). "Only in the most exceptional circumstances will this court consider a claim that was not raised [below]. . . . Such exceptional circumstances may occur where a new and unforeseen constitutional right has arisen between the time of trial and appeal or where the record supports a claim that a litigant has been deprived of a fundamental constitutional right and a fair trial. . . . An exception may also be made where consideration of the question is in the interest of public welfare or of justice between the parties." (Citations omitted; internal quotation marks omitted.) *Dubois* v. *General Dynamics Corporation*, 222 Conn. 62, 68–69, 607 A.2d 431 (1992); see Practice Book § 4185. We conclude that no such exceptional circumstances exist in the present case, and, therefore, we decline to review this claim.

In proceedings against an attorney for professional misconduct, "[the] defendant is entitled to notice of the charges against him, to a fair hearing, and a fair determination, in the exercise of a sound judicial discretion, of the questions at issue, and to an appeal to this court for the purpose of having it determined whether or not he has in some substantial manner been deprived of such rights. . . . The ultimate question is whether he is a fit person to be longer allowed the privileges of being an attorney. . . ." (Citations omitted.) *Grievance Committee of the Bar of New Haven County* v. *Sinn*, 128 Conn. 419, 422, 23 A.2d 516 (1941). The defendant attorney's "relations to the tribunal and the character and purpose of the inquiry are such that unless it clearly appears that his rights have in some substantial way been denied him, the action of the court will not be set aside upon review." Id.

In the present case, the defendant received timely notice of the charges against him and was given the opportunity to be heard. The defendant's attorney appeared at the hearing and had the opportunity to present evidence, cross-examine witnesses and make argument on the defendant's behalf. We are persuaded that the defendant has not been deprived of his rights in any substantial manner and, accordingly, we affirm the order of the trial court permanently disbarring the defendant from the practice of law in the state of Connecticut.

The judgment is affirmed.

In this opinion PETERS, C. J., CALLAHAN and BORDEN, Js., concurred.

BERDON, J., dissenting. Because I believe that the trial court abused its discretion in failing to grant a reasonable continuance, I disagree with part II of the majority opinion.

Although I agree with the majority's conclusion in part IV that the defendant, M. Daniel Friedland, did not properly preserve the claim of judicial bias, the colloquy between the trial court and counsel for the defendant upon which the defendant relies for this claim cannot be viewed in isolation from the rest of the appeal.[1] That colloquy, taken in conjunction with the following facts, clearly supports the defendant on the issue of a continuance: (1) the attorney from the statewide grievance committee who handled the first presentment, and whom the defendant thought was also handling the second presentment, admitted that it was her practice to treat the first court appearance as a status conference only; (2) before the court date, the defendant represented that he had insufficient funds to travel to Connecticut from Florida; (3) the

---

[1] See footnote 15 of the majority opinion for pertinent portions of colloquy.

defendant's wife was taken to the hospital shortly before the hearing; (4) the defendant was required to care for his five year old son; and (5) the defendant did not previously request a continuance.

Furthermore, there was no showing that witnesses would be inconvenienced if the court granted the continuance, nor was there any indication that the profession or individual clients would be subject to any harm as a result of the continuance. Indeed, the defendant was not actively practicing in Connecticut and he previously agreed to an interim suspension of his right to practice law.

Attorneys, like other citizens, are entitled to due process of law and justice. " 'Due process does not mandate a particular procedure but rather requires only that certain safeguards exist in whatever procedural form is afforded.' *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 196 Conn. 172, 176, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985). 'In [presentment] proceedings such as this a defendant is entitled to notice of the charges against him, to a fair hearing, and a fair determination, in the exercise of a sound judicial discretion, of the questions at issue, and to an appeal to this court for the purpose of having it determined whether or not he has in some substantial manner been deprived of such rights.' *Grievance Committee of the Bar of New Haven County* v. *Sinn,* 128 Conn. 419, 422, 23 A.2d 516 (1941)." *Statewide Grievance Committee* v. *Presnick,* 215 Conn. 162, 169, 575 A.2d 210 (1990). Because I would find that the trial court had abused its discretion in not allowing the continuance, I would remand the case for a new hearing. Accordingly, I dissent.