42

## WAYNE E. TESSMANN ET AL. *v.* TIGER LEE CONSTRUCTION COMPANY ET AL.
## (14639)

CALLAHAN, BORDEN, NORCOTT, KATZ and PALMER, Js.

Argued September 24—decision released December 7, 1993

*Edward W. Gasser,* with whom was *Robyn Sondak,* for the appellants (named defendant et al.).

*Edward F. Hennessey,* with whom, on the brief, was *Sheila M. Hennessey,* for the appellees (plaintiffs).

CALLAHAN, J. This is an appeal from a Superior Court judgment rendered upon a jury verdict finding that the defendant Tiger Lee Construction Company (Tiger Lee) violated the New Home Warranties Act, chapter 827 of the General Statutes, and that the defendants Tiger Lee and Eugene Sammartino violated the Connecticut Unfair Trade Practices Act (CUTPA), chapter 735a of the General Statutes. The jury awarded the plaintiffs compensatory damages of $30,000 against Tiger Lee and Sammartino, and the trial court awarded punitive damages of $30,000, attorney's fees of $20,000 and interest of $14,375 against those defendants. Tiger Lee and Sammartino appeal from the judgment[1] claiming: (1) the trial court improperly permitted the plaintiffs to testify concerning the diminution in value of their property, which testimony contradicted their earlier answers to the defendants' interrogatories; (2) the trial court improperly denied the defendants' request for a

---

[1] The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). The defendant FRI Land Equities did not appeal and is not involved in this appeal.

continuance to obtain an expert to rebut the plaintiffs' testimony as to diminution in value; (3) the evidence did not support the trial court's award of punitive damages; and (4) the trial court engaged in an improper ex parte communication with the jury prior to the conclusion of the trial. We affirm the judgment of the trial court.

The facts can be briefly summarized as follows. In the fall of 1986, the plaintiffs, Wayne and Bonnie Tessmann, purchased a parcel of real property from the defendant FRI Land Equities (FRI). In December, 1986, the plaintiffs contracted with Sammartino, an agent of Tiger Lee, to construct a house on the property. The contract provided for the house to be delivered in April, 1987, but it was not delivered until July, 1987. After delivery, the plaintiffs encountered numerous problems with the construction of the house and complained to Sammartino, Tiger Lee and FRI.

The defendants denied the existence of some of the problems and renounced responsibility for the others. The plaintiffs, thereafter, brought this action in the Superior Court. In their complaint, the plaintiffs claimed that there was a unity of ownership between FRI and Tiger Lee, that Sammartino acted as an agent of Tiger Lee, and that all three defendants violated the New Home Warranties Act and CUTPA in connection with the sale of the property and the construction of the plaintiffs' house.

I

The defendants' first two claims address the plaintiffs' testimony concerning the diminution in value of their house due to the problems with its construction. Specifically, the defendants contend that the trial court improperly permitted the plaintiffs to testify concerning the diminished value of their house, and improperly denied the defendants' request for a continuance

to rebut that testimony. In order to resolve the defendants' claims, it is necessary to understand the events that led to the trial court's admission of the plaintiffs' testimony and to its denial of a continuance to the defendants to obtain an expert to counter that testimony.

The defendants first raised the issue of damages in their requests for disclosure and production, which were served on the plaintiffs on August 30, 1990. In their interrogatories, the defendants asked the plaintiffs to:

"6. State the fair market value of the property in question as of July 31, 1987.

"7. State the fair market value [of the property in question] as of July 25, 1988.

"8. State the fair market value of the property as of July 25, 1988, had the alleged defects . . . not been present or had been corrected." The answers given by the plaintiffs to these questions were "I do not know."

On the first day of trial the defendants objected to the plaintiffs' attempt to introduce the report and testimony of Kenneth Grous, a builder. That evidence would have placed a dollar amount on the diminution in value allegedly suffered by the plaintiffs due to the defendants' substandard construction. The defendants claimed that they had never received a copy of the report. The defendants moved to preclude Grous' report and testimony under Practice Book § 220 (D),[2] which required the plaintiffs to disclose the substance

[2] Practice Book § 220 (D) provides in relevant part: "[A]ny plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within 60 days from the date the case is claimed to a trial list. . . . If disclosure of the name of any expert expected to testify at trial is not made in accord-

of any expert testimony they planned to present within sixty days from the date the case was claimed to the trial list. Section 220 (D) provides that, in the absence of such a disclosure, the expert "shall not testify except in the discretion of the court for good cause shown."

In response to the objection to Grous' report, the plaintiffs' counsel stated that the report had been tele-copied to the defendants' counsel in a timely manner. The defendants' counsel, however, maintained that he had never received a copy of any such report. After hearing argument by both attorneys, the trial court granted the defendants' motion in limine and excluded Grous' report and testimony pursuant to § 220 (D).

That ruling precluded the plaintiffs' only expert witness able to place a dollar amount on the plaintiffs' damages. Faced with this prospect, the plaintiffs sought to introduce evidence regarding diminution in value by testifying themselves at trial as to their opinion of the value of their house as it was, compared to what it would have been had the house been properly constructed. The plaintiffs testified that, in their opinion, the diminution in value that they had suffered as a result of construction deficiencies was between $20,000 and $30,000.[3]

To recover damages, the plaintiffs had the burden of producing evidence that afforded the jury a reasonable basis to measure the plaintiffs' loss. *Ferri* v. *Pyramid Construction Co.*, 186 Conn. 682, 691, 443 A.2d 478 (1982); *Johnson* v. *Flammia,* 169 Conn. 491, 501, 363 A.2d 1048 (1975). One way the plaintiffs could have proven damages would have been to present evi-

ance with this subsection, or if an expert witness who is expected to testify is retained or specially employed after that date, such expert shall not testify except in the discretion of the court for good cause shown."

[3] Bonnie Tessmann testified that the diminution in value was between $20,000 and $23,000, and Wayne Tessmann testified that the diminution in value was between $20,000 and $30,000.

dence of diminution in value, which is "the difference in value between the property had it been as represented and the property as it actually was." *Johnson* v. *Healy,* 176 Conn. 97, 106, 405 A.2d 54 (1978); *West Haven Sound Development Corp.* v. *West Haven,* 207 Conn. 308, 318, 541 A.2d 858 (1988).

It is undisputed that homeowners are qualified to testify as to their personal opinion regarding the value, or diminution in value, of their properties. *State* v. *Simino,* 200 Conn. 113, 120, 509 A.2d 1039 (1986); *Griffin* v. *Nationwide Moving & Storage Co.,* 187 Conn. 405, 422, 446 A.2d 799 (1982); *McCahill* v. *Town & Country Associates Ltd.,* 185 Conn. 37, 41, 440 A.2d 801 (1981).[4] The defendants conceded as much, but objected to the admission of the plaintiffs' testimony on the ground that it contradicted their answers to the defendants' interrogatories, which had indicated that

---

[4] The defendants also contend that the plaintiffs' testimony as to diminution in value should not be allowed because the plaintiffs, although claiming to testify to diminution in value, actually gave their opinion as to the cost of repairs. This claim is without merit.

First, we note that a homeowner's opinion on diminution in value may be accepted if, from all the evidence, the trier of fact finds the opinion credible. *McCahill* v. *Town & Country Associates, Ltd.,* 185 Conn. 37, 41, 440 A.2d 801 (1981). Both plaintiffs claimed to give their opinion as to the diminution in value of the property. The fact that they may have relied, in part, on the cost of repairs in giving their opinion is no basis on which to challenge their opinions. It is well established that the "[r]easonable costs of repair may . . . sometimes furnish a reasonable approximation of diminished value. *Richard* v. *A. Waldman & Sons, Inc.,* 155 Conn. 343, 348–49, 232 A.2d 307 (1967); *Levesque* v. *D & M Builders, Inc.,* 170 Conn. 177, 182, 365 A.2d 1216 (1976)." *Johnson* v. *Healy,* 176 Conn. 97, 106, 405 A.2d 54 (1978). If the defendants wished to challenge the plaintiffs' calculation of diminution in value, the appropriate vehicle would have been cross-examination, which the defendants failed to do. We cannot say that the trier of fact could not reasonably have accepted the plaintiffs' unchallenged opinions. The defendants' other objections to the plaintiffs' testimony, not raised at trial or in their motion to set aside the verdict or for a new trial, will not be considered. See Practice Book § 4185; *Safford* v. *Warden,* 223 Conn. 180, 189–90, 612 A.2d 1161 (1992); *Miko* v. *Commission on Human Rights & Opportunities,* 220 Conn. 192, 197 n.5, 596 A.2d 396 (1991).

the plaintiffs did not know the fair market value of their house or its fair market value without the defects. Thus the defendants argue on appeal that the trial court improperly failed to exclude the plaintiffs' testimony pursuant to Practice Book § 231 (d).

Section 231 provides in relevant part: "If any party has failed to answer interrogatories or to answer them fairly, or has intentionally answered them falsely or in a manner calculated to mislead, or has failed to respond to requests for production or for disclosure . . . or has failed to comply with the provisions of Sec. 232[5] . . . the court may, on motion, make such order as the ends of justice require." Specifically, the court may enter "an order prohibiting the party who has failed to comply from introducing designated matters in evidence." Practice Book § 231 (d). Whether to exclude testimony under § 231 (d) is a matter entrusted to the sound discretion of the trial court. *Berry* v. *Loiseau,* 223 Conn. 786, 798–99, 614 A.2d 414 (1992); *Pool* v. *Bell,* 209 Conn. 536, 541, 551 A.2d 1254 (1989); *Filisko* v. *Bridgeport Hydraulic Co.,* 176 Conn. 33, 40, 404 A.2d 889 (1978). In reviewing the trial court's decision, every reasonable presumption should be made in favor of the court's proper exercise of its discretion. *Timm* v. *Timm,* 195 Conn. 202, 206, 487 A.2d 191 (1985); *Dudas* v. *Ward Baking Co.,* 104 Conn. 516, 518, 133 A. 591 (1926).

---

[5] "[Practice Book] Sec. 232. ——CONTINUING DUTY TO DISCLOSE

"If, subsequent to compliance with any request or order for discovery and prior to or during trial, a party discovers additional or new material or information previously requested and ordered subject to discovery or inspection or discovers that the prior compliance was totally or partially incorrect or, though correct when made, is no longer true and the circumstances are such that a failure to amend the compliance is in substance a knowing concealment, he shall promptly notify the other party, or his attorney, and file and serve in accordance with Sec. 120 a supplemental or corrected compliance."

The plaintiffs claim that their testimony regarding the diminution in the value of their house attributable to the defendants' faulty construction was not inconsistent with their answers to the defendants' interrogatories and was properly admitted for that reason. We disagree.

The plaintiffs first argue that whereas the defendants' questions regarding fair market value requested a fact, the plaintiffs' trial testimony simply constituted their opinion of the property's diminution in value. This distinction is without merit. A determination of fair market value, which is defined as "[t]he amount at which property would change hands between a willing buyer and a willing seller"; Black's Law Dictionary (6th Ed. 1990); necessarily requires a prediction as to what price a property would command were it to be sold. The plaintiffs, therefore, should have understood that the defendants' questions sought their opinions as to the property's fair market value rather than any objectively verifiable fact.

We also reject the plaintiffs' other overly technical explanations as to why their testimony at trial covered different areas than the defendants' interrogatories and was not inconsistent with their answers to the interrogatories. A reasonable person would have concluded that the defendants' interrogatories were aimed at the same information to which the plaintiffs testified at trial—diminution in value. Practice Book § 231, moreover, does not permit sanctions only in instances of outright falsehood but allows the court to impose sanctions for answers that are unfair or "calculated to mislead." See *Mulrooney* v. *Wambolt,* 215 Conn. 211, 219, 222, 575 A.2d 996 (1990) (defendant could not introduce expert at trial after claiming in interrogatory answers that " '[n]o expert contemplated at this time' "); *Perez* v. *Mount Sinai Hospital,* 7 Conn. App. 514, 517, 509 A.2d 552 (1986) (plaintiff could not introduce an unpaid

expert after claiming in interrogatory answers that she had not " 'employed' " an expert); *Sturdivant* v. *Yale-New Haven Hospital,* 2 Conn. App. 103, 106, 476 A.2d 1074 (1984) (plaintiff could not introduce a witness she had previously consulted after she had stated in interrogatory answers that she had not "retained" an expert).

The purpose of § 231 is to enforce the parties' continuing responsibilities to disclose under Practice Book §§ 224 and 232. Moreover, the purpose of the rules of discovery is to "make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States* v. *Procter & Gamble,* 356 U.S. 677, 682, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1957); *Knock* v. *Knock,* 224 Conn. 776, 782, 621 A.2d 267 (1993); *Picketts* v. *International Playtex, Inc.,* 215 Conn. 490, 508, 576 A.2d 518 (1990). We conclude that the defendants' interrogatories were posed for the manifest purpose of ascertaining the extent to which the plaintiffs claimed they were damaged, which was also the subject of the plaintiffs' testimony at trial.

Although we do not accept the plaintiffs' arguments that the defendants' interrogatories were substantively different from the questions they answered at trial, we believe, after examining all of the surrounding circumstances, that the trial court acted within its discretion in not excluding the plaintiffs' testimony under § 231 (d). In the circumstances of this particular case, it was not unreasonable for the court to determine that the plaintiffs' inconsistent answers resulted from an unanticipated turn of events rather than from any calculated effort by the plaintiffs to mislead the defendants. See Practice Book § 231.

The record discloses that before the first day of trial, the plaintiffs had intended to present an expert to tes-

tify as to the diminution in value of their property. Accordingly, from the time they answered the defendants' interrogatories up to the date of the trial, the plaintiffs justifiably could have relied on their expert to testify as to diminution in value and they would have had no reason to form an independent opinion on that subject. In other words, it was reasonable for the plaintiffs to have relied on their expert's opinion prior to trial, without ever having made an independent determination in value. It was only when the plaintiffs discovered, on the first day of trial, that their expert would not be allowed to testify that it became necessary for them to develop a different strategy for proving damages. It was reasonable under these circumstances for them to attempt at that time to formulate an opinion based on their personal knowledge and to testify to it pursuant to *McCahill* v. *Town & Country Associates, Ltd.,* supra. The sanctions provisions of § 231 are not mechanically applied. Rather, the trial court is afforded wide discretion to "make such order as the ends of justice require." Under the circumstances of this case, we cannot conclude that the court abused its broad discretion or acted unreasonably in refusing to sanction the plaintiffs by excluding their testimony as to diminution of value.[6]

## II

The defendants next claim that once the testimony was admitted, the trial court abused its discretion by refusing the defendants' request for a continuance to obtain an appraiser to rebut the plaintiffs' unexpected testimony. The decision to grant or deny a continuance

---

[6] The plaintiffs also rely on General Statutes § 52-200, which provides that a disclosure on oath "shall not be deemed conclusive, but may be contradicted like any other testimony." Because we find that the trial court did not abuse its discretion in admitting the plaintiffs' testimony, we need not reach the question of an alleged conflict between the discovery rules and the General Statutes.

lies within the sound discretion of the trial court. *Statewide Grievance Committee* v. *Friedland,* 222 Conn. 131, 142, 609 A.2d 645 (1992); *Rullo* v. *General Motors Corp.,* 208 Conn. 74, 78, 543 A.2d 279 (1988); *State* v. *Marra,* 195 Conn. 421, 437, 489 A.2d 350 (1985). In order to demonstrate that the trial court abused its broad discretion, the defendants must demonstrate that (1) the court acted arbitrarily in denying their motion for a continuance, *and* (2) the denial actually prejudiced the defendants' ability to present a defense. *Rullo* v. *General Motors Corp.,* supra, 79 ("continuance serves to minimize the possibly prejudicial effect of a late disclosure"); *State* v. *Marra,* supra, 438; *State* v. *Myers,* 193 Conn. 457, 463, 479 A.2d 199 (1984).

We begin with the proposition that when a party is prejudiced by a failure to disclose in a timely manner, a continuance is ordinarily the proper method to alleviate any prejudice. *Rullo* v. *General Motors Corp.,* supra; *State* v. *Barrett,* 205 Conn. 437, 455, 534 A.2d 219 (1987). The record indicates that the defendants had no notice of the plaintiffs' testimony as to value until the day that it was presented. Although the plaintiffs' counsel claimed that he had given the defendants timely notice of Grous' report, the trial court accepted the representation by the defendants' counsel that he never received the report. Moreover, as discussed above, the defendants reasonably concluded from the plaintiffs' answers to their interrogatories that the plaintiffs would not testify as to diminution in value.

Consequently, the defendants have demonstrated that they did not receive timely notice of the plaintiffs' testimony and that a continuance could have been proper under the circumstances. They have failed, however, to demonstrate that the trial court's refusal to grant them a continuance actually prejudiced their ability to present a defense. The defendants requested a continuance so they would have time to secure an

appraiser to rebut the plaintiffs' testimony concerning the value of their house.[7] Nevertheless, the defendants have not established that a continuance was necessary to secure an appraiser to testify. After the plaintiffs testified, the defendants had the period of time from May 6, the date of the plaintiffs' testimony, until May 14, the end of the defense presentation, eight days later, to obtain an appraiser.[8] The defendants, themselves real estate agents and builders, should have had no difficulty in securing a competent appraiser to view the property and prepare testimony to counter that of the plaintiffs within the eight day time period. There is nothing in the record to indicate that the defendants even attempted to secure an appraiser. Under these circumstances, we cannot conclude that the trial court's action prejudiced the defendants' ability to present a defense.

## III

The defendants' next contention is that the trial court abused its discretion in awarding punitive damages in the amount of $30,000. General Statutes § 42-110g (a) provides that "[t]he court may, in its discretion, award punitive damages and may provide such equitable relief

[7] The only discussion of the continuance at trial consisted of the following colloquy between the defendants' counsel and the trial court:

"Mr. Gasser: I would also move at this time, Your Honor, for a continuance of this case in order to obtain testimony in contravention to that testimony which I feel has never been disclosed to date. I'm asking for a two-week continuance to obtain an appraiser who was never obtained because [neither] Mrs. Tessmann nor Mr. Tessmann ever responded in the interrogatories, Your Honor.

"The Court: Your request is denied.

"Mr. Gasser: Exception please Your Honor.

"The Court: You may have an exception.

"Mr. Gasser: Thank you."

[8] The plaintiffs' testimony regarding damages was presented on May 6, 1992, the second day of trial. The plaintiffs' case rested six days later, on the afternoon of May 12. The defendants' case rested the next day of trial, May 14, and the jury heard closing arguments later the same day.

as it deems necessary or proper." The standard for awarding punitive damages under CUTPA was set forth in *Gargano* v. *Heyman*, 203 Conn. 616, 622, 525 A.2d 1343 (1987), where we explained, " '[i]n order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights. *Collens* v. *New Canaan Water Co.*, 155 Conn. 477, 489, 234 A.2d 825 (1967).' "[9]

The record in this case contains evidence that, if credited, amply supports the trial court's determination that the defendants' actions, at the very least, exhibited a reckless disregard of the plaintiffs' rights. Bonnie Tessmann testified that Tiger Lee represented that it would do all the work itself with its own employees, but that Tiger Lee, in fact, relied completely on subcontractors. She also testified that, although she informed Sammartino that the side driveway needed to be constructed to afford easy access to the kitchen door because of her medical problems, the driveway was not suitable for her use and in fact was so steep that it leaked water into the basement. She further attested that the skylight leaked consistently from the time she moved in, but that Tiger Lee and Sammartino refused to correct the condition and claimed it was merely condensation. Moreover, she stated that Sammartino inspected another leak, but later denied seeing either the leak or the bucket she placed under it and subsequently refused to discuss the leak any further. Bonnie Tessmann further testified that, even at the time of trial, water continued to leak into her basement near an electrical panel and into her garage, due to poor grading that Sammartino had refused to correct. She also testified that, although she was told she

---

[9] On appeal, the defendants have not questioned the reasonableness of the amount of the award, but have limited their argument to the proposition that no punitive damages should have been awarded.

would receive a dumpster to dispose of debris on the property, the dumpster was never delivered and, in fact, when the house was built, paint cans and other noxious materials were partially buried in a wetland near her well. Furthermore, Walt Tabor, an agent of the defendants, wrote a letter to Wayne Tessmann indicating that the solution to the problem of mice entering the house through a hole in a wall was to set mouse traps.

After hearing this testimony and other evidence of the defendants' derelictions, the trial court concluded that "the defendants attempted to stonewall the plaintiffs . . . . [T]hey made no real substantive type repairs, ignored the plaintiffs' requests, [and] took advantage of the plaintiffs." The defendants' actions clearly rise above simple negligence and support a finding of reckless or intentional conduct by the defendants to the plaintiffs' detriment. Given the extensive testimony as to issues relevant to punitive damages, we conclude that the trial court's determination that punitive damages were warranted in the amount of $30,000 was supported by the record and did not constitute an abuse of the court's discretion.

## IV

The defendants' final claim is that the trial court received an improper ex parte communication from a juror in violation of Canon 3A (4) of the Code of Judicial Conduct. They contend that the violation occurred when the court met with the jury after the jury had awarded compensatory damages and had been discharged, but before the court had formulated its award of punitive damages and attorney's fees. According to the defendants, after the trial court had awarded punitive damages and attorney's fees, the court had told the defendants' counsel that, at its earlier meeting with the jury, one of the jurors had indicated to the court that he did not like Sammartino.

The defendants moved to set aside the verdict or to grant a new trial on the issue of punitive damages, arguing that the juror's comment might have affected a matter still pending before the court, constituted an impermissible ex parte communication, and detracted from the court's appearance of impartiality. The court denied the defendants' motion.

Canon 3A (4) provides: "A judge shall not *initiate, permit or consider* ex parte communications . . . ." (Emphasis added.) A judge, nevertheless, is authorized to have ex parte communications "for scheduling, *administrative purposes* or emergencies that do not deal with substantive matters or issues on the merits . . . provided: (i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and (ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond." (Emphasis added.) Code of Judicial Conduct Canon 3A (4) (a).

Prior to meeting with the jurors, the court notified the attorneys for both parties of its intention to do so, and explained that the purpose of its meeting was to answer any questions the jurors might have about the trial they had just completed and to solicit feedback about the attorneys' performances. None of the parties objected to the court's expressed intention. Thereafter, when the defendants moved to set aside the verdict, the court placed the purpose of the meeting more fully on the record stating: "[A]s a matter of good public relations, this court has adopted the policy of speaking with its jury for two purposes; one is to respond to their questions about things that happen during the trial, and, secondly . . . the court inquires as to their opinions as to the behavior of counsel." The court stated that during these meetings it never inquired as to how the jury had reached its verdict.

Answering jurors' questions, to promote good public relations, and soliciting feedback regarding the performance of members of the bar are within the court's administrative functions and are permissible under Canon 3A (4) (a) as long as the judge fully discloses his intention to speak with the jury and discloses the subject matter to be discussed.

The defendants do not appear to question the court's authority, in general, to conduct an ex parte meeting with a discharged jury.[10] Instead, the defendants claim that the juror's comments to the trial court regarding his personal feelings toward Sammartino detracted from the required appearance of impartiality on the part of the trial court and that the court acted improperly by failing to disqualify itself from the remaining matters in the case. The defendants do not claim, and there is no independent evidence that would lead us to believe, that the court invited or solicited the juror's comment in question.[11]

Canon 3C (1) of the Code of Judicial Conduct requires a judge to disqualify "himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." The reasonableness standard is an

---

[10] The defendants are, in fact, precluded from making this claim because they failed to object when the trial court informed the parties of its intention to meet with the jury to discuss these matters. We do not allow parties to await the outcome of a matter before deciding whether to make an objection but require parties to raise the objection, if possible, when there is still an opportunity for the court to correct the proposed error. *Gillis* v. *Gillis,* 214 Conn. 336, 343, 572 A.2d 323 (1990); *Krattenstein* v. *G. Fox & Co.,* 155 Conn. 609, 616, 236 A.2d 466 (1967).

[11] In fact, the court's comments, made in denying the defendants' motion to set aside the verdict or for a new trial, give the impression that the trial court had no real recollection of the comment having been made ("I don't have any particular memories of discussing very much about the trial. . . . Now it is conceivable, and obviously it must have happened, that somebody must have said, 'I really don't like that Mr. Sammartino,' but I have to in good conscience say that it had no effect whatsoever on whether or not the court was going to impose punitive damages.").

objective one. Thus, the question is not only whether the particular judge is, in fact, impartial but whether a reasonable person would question the judge's impartiality on the basis of all the circumstances. *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 746, 444 A.2d 196 (1982); E. Thode, Reporter's Notes to Code of Judicial Conduct (1973) p. 60 (standard is whether a "reasonable [person] knowing all the circumstances" would conclude that the judge's " 'impartiality might reasonably be questioned' "). The defendants contend that because the trial court heard the juror's comment, a reasonable person would question the judge's ability to decide the issue of punitive damages and attorney's fees in an impartial manner. We disagree.

The court had presided over a trial that consumed six actual trial days, had heard all the witnesses testify and had ample information to arrive at its own conclusions. There is no allegation that the court initiated, or participated in, a conversation about the merits of the case. Moreover, the court stated for the record that, while it was "conceivable" that the comment was made, it had no effect on the court's award of punitive damages.

In civil bench trials, judges are regularly faced with the task of disregarding irrelevant and possibly prejudicial evidence and making a decision based exclusively on the evidence admitted at trial and the applicable law. Moreover, we do not require a new trial every time a jury is exposed to prejudicial matter, but often cure any possible prejudice with an instruction to the jury to disregard any irrelevant prejudicial information it may have acquired during the course of the trial. We conclude that, even if it is assumed the juror made the comment ascribed to him, a reasonable person would not, under the circumstances, question the ability of the trial

court to disregard the juror's comment and decide the remaining issues in the case in an impartial manner.[12]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[12] The case the defendants rely on, *Smith* v. *Convenience Store Distributing Co.,* 583 N.E.2d 735 (Ind. 1992), is not on point. In *Smith,* the trial court, contrary to its representations to the parties, actively engaged in an impermissible ex parte communication by answering a jury's questions regarding retrial, mediation and settlement of the case before the jury had entered its deliberations. The Supreme Court of Indiana found that the judge's comments constituted an impermissible ex parte communication and granted a new trial because of the presumed prejudicial effect on the jury's deliberations. Id., 738.

The present case does not involve a judge's comments on relevant legal authority to a jury before the conclusion of trial, but involves an unsolicited comment reflecting a juror's personal feelings toward a defendant that occurred in the course of an otherwise legitimate ex parte encounter after the jury had completed its function and had been discharged from further consideration of the case.