RICHARD NIELSEN ET AL. *v.* STANLEY R.
WISNIEWSKI ET AL.
(11371)

O'CONNELL, FOTI and LAVERY, Js.

Argued April 27—decision released July 20, 1993

*Geoffrey S. Brandner,* with whom, on the brief, was *John Lino Ponzini,* for the appellants (defendants).
*David J. Ordway,* for the appellees (plaintiffs).

FOTI, J. The defendants[1] appeal from the judgment rendered in favor of the plaintiffs, Richard Nielsen and Joy Nielsen. Following a six day trial before an attorney trial referee; see General Statutes § 52-434 (a) (4); Practice Book § 428 et seq.; the trial court accepted the reported findings and rendered judgment. On appeal, the defendants claim that the trial court improperly (1) awarded punitive damages, (2) awarded interest retroactively, and (3) allowed the attorney trial referee to rule on a motion to correct. We agree with the defendants' second claim and reverse in part.

The evidence introduced at trial supports the following facts. In November, 1983, the plaintiffs entered into an oral contract with the defendants to lease a third floor apartment at 256 Washington Boulevard in Stamford. The defendants owned that building and several other residential properties and were in the business of renting residential properties. The plaintiffs, along with their four young children, took possession of the apartment. At the time, the plaintiffs were aware that the premises needed substantial renovation. For a long period before and after the plaintiffs moved in, the condition of the leased premises had been in substantial violation of health and safety codes, despite numerous written warnings to the defendants. Among the numerous violations was the lack of smoke detectors on the premises.

---

[1] The defendants are Stanley R. Wisniewski, Frederick H. Wisniewski and Richard Wisniewski.

The plaintiffs paid a $450 security deposit under the lease. The parties agreed on an initial rent of $250 a month until the defendants completed repairs within approximately three months, after which the parties agreed that the rent would increase and rent subsidies would supplement the plaintiffs' payments.

In February, 1984, after the defendants had failed to perform the agreed repairs, the parties entered into a new agreement by which the plaintiffs were to perform much of the repair work using materials supplied by the defendants. These repairs would not include electrical work. The plaintiffs performed such repairs as they were able through June, 1984. The defendants failed, however, to supply necessary materials and skilled labor. By August, 1984, the relationship between the parties had broken down,[2] and the defendants served the plaintiffs a notice to quit possession because of nonpayment of rent. A summary process trial in November, 1984, resulted in judgment being rendered for the plaintiffs; the defendants in the present case were found not to be entitled to collect rent because of the substandard condition of the premises. During the entire period of the plaintiffs' occupancy,[3] from November, 1983, through February, 1985, the leased premises was in substantial violation of Stamford's health and safety code, lacked a certificate of apartment occupancy, and was not an apartment that the defendants were legally entitled to rent. The condition of the apartment was not improved significantly after August, 1984.

Following the judgment in the summary process action, the defendants engaged in a continuing pattern

[2] Prior to June, 1984, the parties were on friendly terms, and the plaintiffs even invited the defendants to dinner at their apartment on at least one occasion.

[3] The plaintiffs paid the defendants a total of $1715 in rent in addition to the $450 security deposit during this period of occupancy.

of wrongful conduct with respect to the plaintiffs and the apartment they occupied. Among other actions, the defendants shut off the plaintiffs' gas and electricity, which they used for heat, hot water and cooking. The defendants also cut an electric line that the plaintiffs had installed for substitute electrical service after the defendants had shut off the regular service. The defendants locked the utility control area of the basement thereby preventing the plaintiffs from taking any action to restore the utility services. None of the utility shutoffs resulted from any failure of the plaintiffs to pay their utility bills.

In addition to being deprived of essential utilities, the plaintiffs were deprived of their quiet enjoyment of the apartment and suffered distress and anxiety about their welfare. The named plaintiff sustained a reduction of his income as a result of the time he spent dealing with the defendants' wrongful conduct.

In February, 1985, the building at 256 Washington Boulevard was condemned, and the plaintiffs were relocated. At no time did the defendants return the plaintiffs' security deposit or pay them interest on it; the defendants never notified the plaintiffs as to any disposition of the security deposit. At all times, the defendants had actual knowledge of an address to which they could send mail to the plaintiffs after they had vacated the apartment.

The court adopted the attorney trial referee's corrected report, in which the referee found violations of General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA); General Statutes § 47a-21, which controls the handling of security deposits; and General Statutes § 47a-4 et seq., which controls the acceptance of rent for an uninhabitable apartment lacking a certificate of apartment occu-

pancy. The trial court awarded the plaintiffs damages[4] in the amount of $13,566, punitive damages in the amount of $60,000, counsel fees in the amount of $25,000, interest on the damages and punitive damages at the legal rate from February 28, 1985, to the date that the judgment is fully satisfied, interest on counsel fees at the legal rate from October 4, 1991, to the date the judgment is fully satisfied, and costs of the action.

I

The defendants first claim that the trial court improperly awarded punitive damages pursuant to General Statutes § 42-110g because there was no specific finding of malicious or evil motive or that the defendants' conduct was reckless, indifferent, intentional, wanton or violent. They argue that the conduct found to have taken place is insufficient to justify punitive damages without a specific finding that uses the words reckless, indifferent, intentional, wanton or violent. They further argue that the trial court's failure to specify what standard of proof it was applying, and the attorney trial referee's application of an elevated "clear and convincing evidence" standard somehow reflects on the requirement of a specific finding. We disagree.

Clear and convincing proof is not the appropriate standard of proof whenever claims of tortious conduct have serious consequences or require the proof of willful, wrongful or unlawful acts. Our Supreme Court has stated that "[a]bsent evidence of legislative intent to the contrary, we continue to presume that when a statutory private right of action includes multiple damages, the plaintiff's burden of proof is the same as that in other tort cases." *Freeman* v. *Alamo Management Co.*, 221 Conn. 674, 683, 607 A.2d 370 (1992). The ordi-

---

[4] The court fully accepted the attorney trial referee's recommendation as to damages, interest and counsel fees.

nary preponderance of the evidence standard was thus appropriate here. Id., 678. The attorney trial referee's application of a higher burden of proof than was required is not relevant to the issue presented on appeal; nor is it relevant that the trial court, in adopting the report and incorporating the referee's findings, did not indicate the standard of proof it employed.

"Awarding punitive damages and attorney's fees under CUTPA is discretionary; General Statutes § 42-110g (a) and (d) . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done." (Citation omitted.) *Gargano* v. *Heyman,* 203 Conn. 616, 622, 525 A.2d 1343 (1987). "Punitive damages are awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights." *Vandersluis* v. *Weil,* 176 Conn. 353, 358, 407 A.2d 982 (1978). The "flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence." *Venturi* v. *Savitt, Inc.,* 191 Conn. 588, 592, 468 A.2d 933 (1983).

Our Supreme Court has perceived the disparity of power between landlords and tenants, and has recognized that the chances of deterring landlords' abuses of power are materially increased by subjecting them to the payment of punitive damages. *Freeman* v. *Alamo Management Co.,* supra, 683–84. The facts found in this case show such an abuse of the power held by the defendants as landlords and directed toward the vulnerable plaintiffs as tenants. Punitive damages are appropriate because the circumstances of this case satisfy the basic requirements that justify such an award. The facts found lead inescapably to the conclusion that the defendants were recklessly indifferent to the rights of the plaintiffs, and that they intentionally and wantonly violated those rights. See *Pullman, Com-*

*ley, Bradley & Reeves* v. *Tuck-it-away, Bridgeport, Inc.,* 28 Conn. App. 460, 464, 611 A.2d 435, cert. denied, 223 Conn. 926, 614 A.2d 825 (1992) (use of talismanic words is not required where memorandum of decision contains all necessary subordinate findings to support trial court's conclusion). Under the circumstances, we conclude that the absence of a specific finding other than "wrongful conduct" did not impair the court's ultimate conclusion regarding punitive damages. The trial court did not abuse its discretion in finding that the defendants' outrageous conduct warranted invoking the punitive provisions of CUTPA.

## II

The defendants next argue that the trial court improperly awarded interest retroactive to 1985 on the punitive damages awarded to the plaintiffs pursuant to General Statutes § 42-110g. We agree.

The purpose of an award of interest is to compensate a party for a wrong. *Neiditz* v. *Morton S. Fine & Associates, Inc.,* 199 Conn. 683, 691–92, 508 A.2d 438 (1986). Such an allowance is primarily an equitable determination within the discretion of the trial court. *Milgrim* v. *Deluca,* 195 Conn. 191, 201, 487 A.2d 522 (1985); *Bertozzi* v. *McCarthy,* 164 Conn. 463, 467, 323 A.2d 553 (1973). Under General Statutes § 37-3a, interest "may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable." For example, interest is awarded at the maturity of a debt from the time the money becomes due. *Marcus* v. *Marcus,* 175 Conn. 138, 146, 394 A.2d 727 (1978). Since punitive damages do not become payable before judgment, however, § 37-3a is inapplicable.

Where prejudgment interest is expressly allowed by statute, a rate of interest is generally specified in the statute. See, e.g., General Statutes §§ 49-41a (b) and

49-42. Under CUTPA, however, prejudgment interest is not expressly allowed and, therefore, no rate of interest is stated. The relevant part of General Statutes § 42-110g (a), on which the trial court relied in awarding interest on the punitive damages, states only that "[t]he court may, in its discretion, award punitive damages *and may provide such equitable relief as it deems necessary or proper.*" (Emphasis added.) We are unwilling to conclude that the trial court may award retroactive interest on punitive damages under the guise of "equitable relief" because this would also require us to conclude that the trial court may determine the proper rate of interest. The trial court awarded interest "at the legal rate." The "legal rate" cannot be determined, however, because there is no statute expressly providing for prejudgment interest in this case. We cannot accept the plaintiffs' argument that the inherent equitable powers of the trier under § 42-110g, together with the provisions of § 37-3a, support an award of interest at the rate of 10 percent from the date their apartment was condemned until satisfaction of the judgment. We agree with the defendants that the trial court lacked the power, statutorily or equitably, to award prejudgment interest on punitive damages.

### III

The defendants' final claim is that the trial court improperly permitted the attorney trial referee to rule on the motion to correct after the referee had brought to the court's attention a possible conflict of interest.

The facts relevant to this claim are as follows. The attorney trial referee filed a report of his findings on October 4, 1991. The parties thereafter filed their respective motions to correct the report. On October 28, 1991, the referee indicated by letter to the clerk of the Superior Court that the law partner of the

defendants' counsel was handling a dissolution action on behalf of the referee's son-in-law. Other than this fact, there was no connection between any individual involved in the present action and those involved in the divorce action of the referee's daughter. No party in either action had any interest in the outcome of the other action. The referee indicated in his letter: "I feel these developments will not affect any action I may take in completing my duties as [attorney trial referee]." The writ for the dissolution had been filed by defense counsel's partner on October 9, 1991, five days after the referee's report was filed.

At no time did the defendants file a motion asking to have the referee recused. By its rectification and articulation, the trial court concluded that there was "no reason to deem the original report tainted by improper influence" and found that the attorney trial referee's corrected report "does not substantially differ from the original report and incorporates some of the corrections proposed by the defendants."

The defendants now argue that no evidentiary hearing was held, and that the trial court, sua sponte, should have disqualified the referee and either appointed another state trial referee to decide the motions to correct or revoked the reference and ordered that a new trial be held. This claim has no merit.

When a party raises a claim involving alleged bias on the part of a trial court judge, as a general rule we will not consider that issue on appeal unless the party has made a proper motion for disqualification at trial. " 'Failure to request recusal or move for a mistrial can be construed as the functional equivalent of consenting to the judge's presiding over the trial.' " *Statewide Grievance Committee* v. *Friedland,* 222 Conn. 131, 146–47, 609 A.2d 645 (1992). Failure to raise a timely objection to the participation of an attorney state trial

referee faces similar consequences on appeal. See *Rowan Construction Corporation* v. *Hassane,* 17 Conn. App. 71, 76–77, 549 A.2d 1085 (1988), aff'd, 213 Conn. 337, 567 A.2d 1210 (1990). The defendants did not seek to disqualify the referee, move for a mistrial, or request an evidentiary hearing for that purpose. Instead, they waited to see the results of both their motion to correct and that of the plaintiffs, and now seek relief on appeal.[5] Parties are not permitted to anticipate a favorable decision, reserving a right to set it aside for reasons known to them before the rendering of that decision if their anticipation is incorrect. See *Diamond Fertiliser & Chemical Corporation* v. *Commodities Trading International Corporation,* 211 Conn. 541, 553, 560 A.2d 419 (1989); *Seal Audio, Inc.* v. *Bozak, Inc.,* 199 Conn. 496, 517, 508 A.2d 415 (1986); *Krattenstein* v. *G. Fox & Co.,* 155 Conn. 609, 616, 236 A.2d 466 (1967); *Fiddelman* v. *Redmon,* 31 Conn. App. 201, 213, 623 A.2d 1064 (1993); *Naftzger* v. *Naftzger & Kuhe, Inc.,* 26 Conn. App. 521, 526, 602 A.2d 606 (1992). Our review of the record here shows no abuse of the trial court's discretion.

The judgment is reversed in part and the case is remanded with direction to render judgment as on file except as modified to eliminate the award of prejudgment interest on the punitive damages.

In this opinion the other judges concurred.

---

[5] After the referee filed a corrected report of findings, the defendants lodged several objections to its acceptance, including an objection based on the referee's alleged conflict of interest. The plaintiffs promptly filed an answer in which they specifically opposed the latter objection.