ROBERT J. ROSSMAN *v.* PATRICIA MORASCO ET AL.
(AC 27290)
(AC 27970)
(AC 28442)

Bishop, Beach and Robinson, Js.

Argued February 5—officially released June 23, 2009

*Paul A. Sobel,* for the appellant in AC 27290 and AC 27970 and the appellee in AC 28442 (plaintiff).

*Michael S. Lynch,* for the appellees in AC 27290 and AC 27970 (named defendant et al.) and for the appellant in AC 28442 (defendant Guardian Alarm Services, Inc.).

BEACH, J. These are consolidated appeals. The plaintiff, Robert J. Rossman, brought an action arising from a business dispute with the defendants Guardian Alarm Services, Inc. (Guardian Alarm), Tracy Emro, Jerome Terracino and Thomas Terracino and Patricia A. Morasco, Jerome Terracino's son and wife, respectively. Guardian Alarm brought a counterclaim against the plaintiff. The jury found in favor of the plaintiff on his claim that Jerome Terracino had breached his fiduciary duty to him but found that the breach did not proximately cause any damages. The jury found the plaintiff liable on the counts of Guardian Alarm's counterclaim alleging unjust enrichment, tortious interference and a violation of General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA). In AC 27290 and AC 27970, the plaintiff claims that the trial court abused its discretion by (1) denying his motion to set aside the verdict, (2) denying his motion for judgment notwithstanding the verdict, (3) denying his motion in limine and (4) granting Guardian Alarm's motions for punitive damages and for attorney's fees on its counterclaim alleging a violation of CUTPA. In AC 28442, Guardian Alarm claims that the court improperly denied its posttrial motion for a constructive trust. We affirm the judgment of the trial court.

The following facts, as reasonably could have been found by the jury, and procedural history are relevant to our resolution of these consolidated appeals. This action arose out of a business dispute between the plaintiff and his uncle, Jerome Terracino. They owned Guardian Systems, Inc. (Guardian Systems), a company that sold and serviced security systems. The plaintiff owned a 25 percent interest in Guardian Systems, and Jerome Terracino owned a 75 percent interest. By the end of 1996, the plaintiff and Jerome Terracino disagreed about the way in which Guardian Systems

should be run, and there was considerable friction between them. The plaintiff formed his own company in April, 1997; this company changed its name to United Alarm Services, Inc. (United Alarm), in September, 1997. In March, 1997, Jerome Terracino removed the plaintiff as an officer and director of Guardian Systems, though the plaintiff remained a 25 percent shareholder. Emro, Jerome Terracino and Thomas Terracino became the officers and directors of Guardian Systems. Jerome Terracino was the president.

On August 29, 1997, Jerome Terracino held an emergency corporate meeting. He had notified Thomas Terracino, Emro and Morasco, but not the plaintiff, of this meeting. At that meeting, the sale of all Guardian Systems' assets to Guardian Alarm was proposed and ultimately approved. Guardian Systems retained a 25 percent ownership in Guardian Alarm, and the other 75 percent was owned by Morasco, who, in exchange, was to contribute $5000 in cash and was to be obligated to loan additional moneys. Before the end of 1997, the plaintiff decided not to wait any longer to settle his differences with Jerome Terracino and began to escalate his efforts to solicit customers to switch accounts from Guardian Alarm to United Alarm.

In March, 2000, the plaintiff brought a multiple count complaint against the defendants. In December, 2004, the plaintiff filed a second amended complaint in which he alleged breach of fiduciary duty, theft, conversion, unjust enrichment and a violation of CUTPA as to all defendants. The defendants subsequently filed a motion to strike, which the court granted as to the counts alleging theft and conversion. On May 25, 2000, the defendants filed a counterclaim against the plaintiff. The counts ultimately submitted to the jury, all alleged by Guardian Alarm only, were claims of tortious interference, a violation of CUTPA and unjust enrichment.[1]

---

[1] The counts remaining after the pleading process also included a corporate derivative claim and a constructive trust claim. The court treated the

Following trial, the jury answered interrogatories and returned a verdict. The jury found in favor of all the defendants on the plaintiff's claims of unjust enrichment and violation of CUTPA, and found in favor of Thomas Terracino and Emro on the plaintiff's claims of breach of fiduciary duty. It found in favor of Morasco, Guardian Alarm, Thomas Terracino and Emro on the plaintiff's claims of "substantial assistance or encouragement to [Jerome Terracino] in the breach of [his] fiduciary dut[y]." The jury found in favor of the plaintiff only as to the claim that Jerome Terracino had breached his fiduciary duty to the plaintiff, but the jury found that the breach did not proximately cause the plaintiff any damages. With respect to Guardian Alarm's counterclaim, the jury found the plaintiff liable on all three counts and awarded total damages of $125,000.

In August, 2005, the plaintiff filed a motion to set aside the verdict and a motion for judgment notwithstanding the verdict. The court denied both motions. Pursuant to General Statutes §§ 42-110b et seq. and 42-110g (d), respectively, of CUTPA, Guardian Alarm subsequently filed a motion for punitive damages in the amount of $150,000 and motion for an award of attorney's fees in the amount of $84,887. The court granted the motions and awarded $25,000 in punitive damages and $42,539.18 in attorney's fees and costs.

The count of Guardian Alarm's counterclaim that alleged a constructive trust was left to the court's determination.[2] In October, 2005, following trial, Guardian

corporate derivative claim and the tortious interference claim as composing one count. The jury interrogatories listed tortious interference, violation of CUTPA and unjust enrichment. The remedy of constructive trust was reserved for consideration by the court. See footnote 2.

[2] There was some question as to whether the constructive trust count had been withdrawn before the case was submitted to the jury. In its supplemental memorandum of law in support of its motion for an order imposing a constructive trust, Guardian Alarm argued that the count had not been withdrawn, but instead was to be decided by the court, if necessary, pending the jury's decision on the issues submitted to it. In its memorandum of

Alarm filed a motion for an order imposing a constructive trust. Guardian Alarm sought resolution of the count of its counterclaim alleging a constructive trust. It requested the court to impose on the plaintiff and United Alarm a constructive trust over the alarm monitoring accounts then with the plaintiff and United Alarm but which had previously been accounts of Guardian Alarm. The court denied Guardian Alarm's motion.

These appeals followed. Additional facts will be set forth as necessary.

I

AC 27290, AC 27970

A

The plaintiff first claims that the court abused its discretion in denying his motion to set aside the verdict.[3] The plaintiff argues that it was inconsistent for the jury to have found that Jerome Terracino breached his fiduciary duty to the plaintiff but that Thomas Terracino and Emro did not. The jury found in favor of the plaintiff on his breach of fiduciary duty claim against Jerome Terracino but awarded zero damages. The plaintiff also

decision on postverdict issues, the court determined that the constructive trust count was left to the court's determination.

[3] The plaintiff claims that the court abused its discretion in denying his motion to set aside the verdict in several ways. Among these are the plaintiff's assertions that the jury could not reasonably have found that (1) Thomas Terracino, Emro, Morasco and Guardian Alarm did not aid and abet Jerome Terracino in his breach of fiduciary duty by providing substantial assistance and encouragement to him, (2) Morasco was not unjustly enriched by the August 29, 1997 asset transfer and (3) the defendants' conduct in connection with the August 29, 1997 asset transfer did not violate CUTPA. The court, however, did not address these issues in its ruling on the plaintiff's motion to set aside the verdict, and the plaintiff did not move for articulation on these issues. See Practice Book § 66-5. Therefore, there is no record from which this court may address this argument. See *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 589 n.9, 830 A.2d 164 (2003) ("[b]ecause our review is limited to matters in the record, we will not address issues not decided by the trial court" [internal quotation marks omitted]).

argues that the jury could not reasonably have found that Jerome Terracino's conduct did not cause the plaintiff any damages. We disagree.

We begin by setting forth our standard of review. "The standard of review governing our review of a trial court's denial of a motion to set aside the verdict is well settled. The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . [The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach [its] conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb." (Internal quotation marks omitted.) *Embalmers' Supply Co.* v. *Giannitti*, 103 Conn. App. 20, 32–33, 929 A.2d 729, cert. denied, 284 Conn. 931, 934 A.2d 246 (2007).

It was not inconsistent for the jury to have found that Jerome Terracino breached his fiduciary duty but that Thomas Terracino and Emro did not breach theirs.[4] During deliberations, the jury asked the court for clarification on the question of whether Guardian Systems was legally obligated to notify the plaintiff, as a minority shareholder, of the August 29, 1997 meeting. In response, the court instructed that a sale of assets that leaves a corporation without significant continuing

---

[4] We further note that the alleged inconsistency is factual in nature. "[A] factually inconsistent verdict will not be overturned on appeal. . . . The law permits inconsistent verdicts because of the recognition that jury deliberations necessarily involve negotiation and compromise. . . . [I]nconsistency of the verdicts is immaterial." (Internal quotation marks omitted.) *State* v. *DeCaro*, 252 Conn. 229, 242, 745 A.2d 800 (2000).

business activity requires the approval of the majority of shareholders, and, if such approval is to be sought at a meeting, the corporation shall notify each shareholder.[5] On the basis of this additional instruction, and the evidence presented at trial, the jury could have concluded that Jerome Terracino, the president of Guardian Systems, assumed responsibility for the notification and actually did the notifying. He had an obligation to notify the plaintiff of the August 29, 1997 meeting at which the sale of all of Guardian Systems assets to Guardian Alarm was proposed and ultimately approved. The evidence presented at trial revealed that on the morning of August 29, 1997, Jerome Terracino called an emergency corporate meeting and notified Thomas Terracino, Emro and Morasco of this meeting but did not notify the plaintiff of the meeting. The jury, therefore, reasonably could have found that Thomas Terracino and Emro did not violate any duties they owed to the plaintiff in connection with the August 29, 1997 transaction but that Jerome Terracino breached his fiduciary duty by not notifying the plaintiff of the meeting.[6]

---

[5] The court instructed as follows: "[A] sale, lease, exchange, or other disposition of assets requires approval of the corporation's shareholders if any such disposition would leave the corporation without significant continuing business activity. . . . [A] disposition that requires approval of the shareholders . . . shall be initialed by a resolution of the board of directors authorizing the disposition. After adoption of such a resolution the board of directors shall submit the proposed disposition to the shareholders for their approval. . . . [I]f disposition is required to be approved by the shareholders . . . and if the approval is to be given at a meeting, *the corporation shall notify each shareholder,* whether or not entitled to vote, of the meeting of shareholders at which the disposition is to be submitted for approval. . . . [T]he disposition to be authorized must be approved by a majority of all the votes entitled to be cast on the disposition . . . ." (Emphasis added.)

[6] Even if the jury were to have found that Thomas Terracino and Emro had breached a fiduciary duty, it is unlikely that the plaintiff would have suffered any harm as a result in that the jury found that no damages were caused by Jerome Terracino's breach.

The plaintiff also argues that the jury could not reasonably have found that Jerome Terracino's conduct did not cause the plaintiff any damages. On the basis of our review of the record, we conclude that the jury reasonably could have found that Jerome Terracino's breach of fiduciary duty did not cause the plaintiff any damages.[7] The jury could have determined that Jerome Terracino's failure to give the plaintiff notice of the meeting did not cause the plaintiff any damages because Jerome Terracino owned 75 percent of Guardian Systems and could have approved the sale of the assets without the plaintiff's consent.

For the foregoing reasons, we conclude that it was within the discretion of the court to deny the plaintiff's motion to set aside the verdict.

B

The plaintiff next claims that the court abused its discretion in denying his motion for judgment notwithstanding the verdict. We disagree.

"[O]ur review of a trial court's refusal to direct a verdict or to render a judgment notwithstanding the verdict takes place within carefully defined parameters. We must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable to the parties who were successful at trial . . . giving particular weight to the concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have

---

[7] The return of a plaintiff's verdict established a technical legal injury that entitled the plaintiff to at least nominal damages. *Hughes* v. *Lamay*, 89 Conn. App. 378, 386 n.7, 873 A.2d 1055, cert. denied, 275 Conn. 922, 883 A.2d 1244 (2005). "[T]his court as a general rule [however] will not reverse and grant a new trial for a mere failure to award nominal damages." (Internal quotation marks omitted.) Id.

reached their conclusion." (Internal quotation marks omitted.) *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 50, 873 A.2d 929 (2005).

1

The plaintiff first claims that the court abused its discretion in denying his motion for judgment notwithstanding the verdict on the count of Guardian Alarm's counterclaim alleging tortious interference. He claims there was insufficient evidence to support the jury's conclusion. We disagree.

"[Our Supreme Court] has long recognized a cause of action for tortious interference with contract rights. . . . The essential elements of such a claim include, of course, the existence of a contractual or beneficial relationship and that the defendant(s), knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss. . . . [F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously." (Internal quotation marks omitted.) *Appleton* v. *Board of Education*, 53 Conn. App. 252, 267, 730 A.2d 88 (1999), rev'd in part on other grounds, 254 Conn. 205, 757 A.2d 1059 (2000).

At trial, Guardian Alarm was the only remaining counterclaim plaintiff. The court instructed the jury that it could consider the plaintiff's actions that occurred only on or after August 29, 1997, because Guardian Alarm had no business, no contracts and no assets prior to that date.[8] The plaintiff argues that there was no evidence from which the jury could have determined that

[8] The court further reminded the jury that Guardian Systems was not a party to this case and was not pursuing any claims.

any of the plaintiff's allegedly improper conduct took place *on or after August 29, 1997.* We disagree because there was evidence from which the jury could have determined that the tortious conduct by the plaintiff occurred on or after August 29, 1997.

At issue were the plaintiff's actions in soliciting and inducing customers to switch to United Alarm. The jury reasonably could have determined that the plaintiff engaged in such conduct after August 29, 1997, and with respect to customers of Guardian Alarm. Jerome Terracino testified that Guardian Systems had no sales and had no business after August 29, 1997. The jury could have determined from the testimony of Jerome Terracino and the plaintiff that the accounts that the plaintiff solicited after August 29, 1997, were accounts of Guardian Alarm customers. The plaintiff testified that he took only a "couple" of accounts before August, 1997, but that by "the end of 1997," he began to escalate his efforts to solicit and to switch customers' accounts to United Alarm, the plaintiff's company. When questioned further as to when he started to switch accounts, the plaintiff testified that he did so when United Alarm was formed. Although there was conflicting testimony concerning when United Alarm was formed, Dana Klesh, an officer and the treasurer of United Alarm, testified that the company was formed around September, 1997. "[I]t is axiomatic that evidentiary inconsistencies are for the jury to resolve, and it is within the province of the jury to believe all or only part of a witness' testimony." (Internal quotation marks omitted.) *Stewart* v. *Cendant Mobility Services Corp.*, 267 Conn. 96, 114–15, 837 A.2d 736 (2003), citing *State* v. *Meehan*, 260 Conn. 372, 381, 796 A.2d 1191 (2002).

Accordingly, the jury reasonably could have found that after August 29, 1997, the plaintiff, using information on his home computer regarding Guardian Alarm's customers, approached Guardian Alarm customers and

solicited them to switch to United Alarm by, among other things, offering them reduced rates and telling them of nonexistent security issues regarding an alleged security risk posed by a convicted felon who had been employed by Guardian Alarm despite the employee's never having constituted such a security risk. Additionally, that employee had left Guardian Systems sometime before the August 29, 1997 transfer.

The plaintiff also argues that there was no evidence that he made false statements to Guardian Alarm customers or that such allegedly false statements induced them to switch their contracts from Guardian Alarm to United Alarm. We disagree. The plaintiff testified that he did whatever he needed to do to get accounts. He testified that he told several customers about a convicted felon whom Jerome Terracino put on the payroll at Guardian Systems; he told them that employment of a felon in the alarm business was a potential security risk. Jerome Terracino testified that the employee in question never constituted a security breach. The jury could have inferred that the plaintiff in fact did not think that there was a significant security risk from his testimony that he took no action to switch over the accounts of his relatives for approximately one year after he became aware of the alleged security breach.

Thus, when viewing the evidence and all inferences that may be drawn from it in a light most favorable to the prevailing party, we conclude that the jury reasonably could have found that the plaintiff's actions on or after August 29, 1997, constituted tortious interference with the contractual relationships between Guardian Alarm and its customers.

2

The plaintiff next claims that the court abused its discretion in denying his motion for judgment notwithstanding the verdict with respect to the jury's verdict

in favor of Guardian Alarm on the count of its counterclaim alleging a violation of CUTPA. The plaintiff argues that given the law and "the lack of evidence regarding any specific and particular misconduct on the part of [the plaintiff] or damage to Guardian Alarm, the jury could not have reasonably found that [his] conduct violated CUTPA." We disagree.

"It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) *Seligson* v. *Brower*, 109 Conn. App. 749, 756, 952 A.2d 1274 (2008).

As examined in more detail with respect to the plaintiff's claim regarding tortious interference; see part I B 1; the jury reasonably could have determined that the plaintiff did whatever he needed to do to get accounts for United Alarm, which included, inter alia, using confidential information concerning customer accounts to solicit customers to switch to United Alarm and telling them about nonexistent security issues. From this evidence, the jury reasonably could have found that the plaintiff violated CUTPA.

3

The plaintiff next claims that the court abused its discretion in denying his motion for judgment notwithstanding the verdict as to the count of Guardian Alarm's counterclaim alleging unjust enrichment. He claims that there was insufficient evidence to support the jury's conclusion. We disagree.

The elements of unjust enrichment are well established. Plaintiffs seeking recovery for unjust enrichment must prove "(1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Internal quotation marks omitted.) *Vertex, Inc.* v. *Waterbury*, 278 Conn. 557, 573, 898 A.2d 178 (2006).

The plaintiff argues that Guardian Alarm failed to prove that he received any benefit as a result of any of his alleged misconduct or that Guardian Alarm was injured as a result of his alleged misconduct. There was evidence, as mentioned previously, from which the jury reasonably could have determined that the plaintiff benefited unfairly as a result of his solicitation of Guardian Alarm's customers to switch to United Alarm and that Guardian Alarm was injured as a result. The evidence need not be repeated here.

4

The plaintiff next takes issue with the jury's award of damages on the defendant's counterclaim. We will address the plaintiff's arguments in turn.

The plaintiff first argues that the court abused its discretion in denying his motion for judgment notwithstanding the verdict as to the $125,000 total damages award on Guardian Alarm's counterclaim because the evidence did not afford a sufficient basis for the jury to estimate the amount of damages with reasonable

certainty. The plaintiff argues that no evidence was presented at trial that any particular Guardian Alarm account, as opposed to a Guardian Systems account, switched to United Alarm because of his actions. We disagree.

"It is axiomatic that the burden of proving damages is on the party claiming them. . . . When damages are claimed, they are an essential element of the plaintiff's proof and must be proved with reasonable certainty. . . . Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." (Citations omitted; internal quotation marks omitted.) *Stamford Landing Condominium Assn., Inc.* v. *Lerman,* 109 Conn. App. 261, 272, 951 A.2d 642, cert. denied, 289 Conn. 938, 958 A.2d 1246 (2008).

There was evidence at trial that the value of each account at Guardian Alarm was $1000. Emro testified that between 1997 and the time of trial, 229 customers of Guardian Systems and Guardian Alarm switched to United Alarm. The plaintiff testified that between 130 and 150 customers that "Guardian" had as of January 1, 1997, were, at the time of trial, customers of United Alarm. The evidence presented was not specific as to the number of customers that switched to United Alarm because of the plaintiff's wrongful actions. From the plaintiff's testimony, however, the jury reasonably could have inferred that many of the switches resulted from the plaintiff's actions. The plaintiff testified that he did whatever he needed to do to get accounts for his company. He solicited Guardian Alarm's customers to switch to United Alarm. The plaintiff argues that there was no evidence that any particular account or group of accounts was a Guardian Alarm account, as distinguished from a Guardian Systems account, and, without such evidence, the amount of damages cannot be ascertained. Although there is some vagueness in

the evidence with respect to this, the jury could have determined from the testimony of Jerome Terracino and the plaintiff that the accounts the plaintiff took after August 29, 1997, were accounts of Guardian Alarm customers. Jerome Terracino testified that Guardian Systems had no sales and had, in fact, not done anything since August 29, 1997. The plaintiff testified that he took only a "couple" of accounts before August, 1997, but that, by "the end of 1997," he decided not to wait any longer to settle his differences with Jerome Terracino and began to escalate his efforts to solicit and to switch customer accounts to United Alarm. On the basis of the evidence before it and with the understanding that "the likely amount of damages need not be determined with mathematical precision"; (internal quotation marks omitted) *Kosiorek* v. *Smigelski*, 112 Conn. App. 315, 323, 962 A.2d 880, cert. denied, 291 Conn. 903, 967 A.2d 113 (2009); the jury reasonably could have found that the total award of damages on the defendant's counterclaim was $125,000.

The plaintiff next argues that the jury misapplied the law in finding different amounts of damages on different counts of the defendant's counterclaim. The jury interrogatories and verdict form stated that Guardian Alarm was awarded $25,000 on its count of tortious interference, $25,000 on its count of unjust enrichment and $75,000 on its count of a violation of CUTPA. He asserts that damages as to each alleged count logically would be the same, that is, lost revenue to Guardian Alarm and, therefore, as a matter of law, separate amounts of damages for each count of the counterclaim cannot be determined. He argues that the fact that the jury found differing amounts of damages sustained by Guardian Alarm on each count is a clear indication that the jury's findings as to damages were based on pure speculation and conjecture. We disagree.

The court instructed the jury that because the parties had more than one claim for damages arising out of the same set of facts, the actual damages may overlap. As the court aptly noted, because the factual allegations underlying the three claims were very similar, a reasonable jury might have made any number of allocations. As we previously have concluded, the jury reasonably could have found that the total award of damages on the defendant's counterclaim was $125,000. The fact that the jury divided that total amount among the counts of the counterclaim so that they added up to $125,000 does not demonstrate that the jury resorted to speculation or conjecture. "The amount of a damage award is a matter peculiarly within the province of the trier of fact, in this case, the jury." (Internal quotation marks omitted.) *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, 270 Conn. 619, 639, 854 A.2d 1066 (2004). "Judgment notwithstanding the verdict should be granted only if we find that the jurors could not reasonably and legally have reached the conclusion that they did reach." (Internal quotation marks omitted.) *Fileccia* v. *Nationwide Property & Casualty Ins. Co.*, 92 Conn. App. 481, 493, 886 A.2d 461 (2005), cert. denied, 277 Conn. 907, 894 A.2d 987 (2006). On the facts of this case, we cannot say that the court abused its discretion in denying the plaintiff's motion for judgment notwithstanding the verdict as to the total damages award on Guardian Alarm's counterclaim.

For the foregoing reasons, we conclude that it was within the discretion of the court to deny the plaintiff's motion for judgment notwithstanding the verdict.

C

The plaintiff next claims that the court improperly denied his motion in limine to preclude the admission of evidence on Guardian Alarm's counterclaim that he "did anything improper with regard to Guardian Alarm

. . . for any conduct that predate[d] May 10, 1999."
The plaintiff argues that liability pursuant to Guardian
Alarm's revised counterclaim filed May 10, 2002, is lim-
ited by General Statutes § 52-577[9] to any wrongful con-
duct that occurred on or after May 10, 1999, three years
prior to Guardian Alarm's filing of the revised counter-
claim against him. We disagree.

The following additional facts are relevant to our
resolution of the plaintiff's claim. The defendants first
filed a counterclaim on May 25, 2000.[10] The plaintiff
filed a motion in limine, which, in relevant part, sought
to preclude Guardian Alarm from introducing evidence
of any conduct that predated May 10, 1999, to prove
its counterclaim. The plaintiff reasoned that § 52-577

[9] General Statutes § 52-577 provides: "No action founded upon a tort shall
be brought but within three years from the date of the act or omission
complained of."

[10] In this counterclaim, the defendants alleged breach of fiduciary duty,
theft, constructive trust, tortious interference, breach of fiduciary duty
regarding the promissory note and a violation of CUTPA. Thereafter, on
November 28, 2001, the defendants filed an amended counterclaim alleging
breach of fiduciary duty, constructive trust, tortious interference, breach
of fiduciary duty regarding the promissory note, a violation of CUTPA and
unjust enrichment. The plaintiff filed a motion to strike the amended counter-
claim, which was granted by the court as to all counts except as to the
count alleging breach of fiduciary duty regarding the promissory note.

The defendants thereafter filed a revised counterclaim on May 10, 2002.
That counterclaim alleged breach of fiduciary duty, corporate derivative
claim, constructive trust, tortious interference, breach of fiduciary duty
regarding the promissory note, violation of CUTPA and unjust enrichment.
The plaintiff subsequently filed a motion to strike all counts except the
count alleging breach of fiduciary duty regarding the promissory note and
also filed a motion for partial summary judgment as to the count alleging
breach of fiduciary duty regarding the promissory note. On August 15, 2003,
the court granted the plaintiff's motion to strike as to the count alleging
breach of fiduciary duty. Jerome Terracino and Guardian Alarm brought
the counts of the counterclaim alleging violation of CUTPA and unjust
enrichment. The court struck both of those counts as to Jerome Terracino.
The court dismissed the count alleging breach of fiduciary duty regarding
the promissory note. The remaining counts submitted to the jury, all alleged
by Guardian Alarm, were tortious interference, a violation of CUTPA and
unjust enrichment.

applied to allegations in the May 10, 2002 revised counterclaim and barred the introduction of such evidence. The court summarily denied the plaintiff's motion as to this request. During trial, the plaintiff made a motion to reargue this portion of his motion in limine. The court heard argument on the motion and denied the requested relief.

We first set forth our standard of review. "[T]he motion in limine . . . has generally been used in Connecticut courts to invoke a trial judge's inherent discretionary powers to control proceedings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Gilmore*, 289 Conn. 88, 128, 956 A.2d 1145 (2008). In this case, however, the plaintiff's motion in limine sought to preclude evidence on the basis of the statute of limitations. "Whether a party's claim is barred by the statute of limitations is a question of law that requires our plenary review." *Bellemare* v. *Wachovia Mortgage Corp.*, 94 Conn. App. 593, 605, 894 A.2d 335 (2006), aff'd, 284 Conn. 193, 931 A.2d 916 (2007).[11] Thus, our review of

---

[11] Our Supreme Court in *Dimmock* v. *Lawrence & Memorial Hospital, Inc.*, 286 Conn. 789, 800, 945 A.2d 955 (2008), left unanswered the question of whether to review the question of whether amendments to a pleading relate back for purposes of the statute of limitations under an abuse of discretion or de novo standard of review. We need not resolve the issue because the plaintiff cannot prevail even under de novo review. See id.

the court's application of the statute of limitations is plenary.

The plaintiff relied on § 52-577 for his statute of limitations defense to Guardian Alarm's counterclaim.[12] The court did not abuse its discretion in denying the plaintiff's motion in limine to preclude the admission of evidence predating May 10, 1999, with respect to the count of Guardian Alarm's counterclaim alleging tortious interference with contractual relations. That count is governed by the three year limitations period of § 52-577. See *Collum* v. *Chapin*, 40 Conn. App. 449, 671 A.2d 1329 (1996) (applying § 52-577 to tortious interference with contractual relations). Both the original and the revised counterclaim alleged tortious interference. The tortious interference count in the May 25, 2000 counterclaim alleged that the plaintiff tortiously interfered with contractual relations between "Guardian" and its customers when he used confidential information obtained from "Guardian" to contact and to persuade customers to switch to a company controlled by the plaintiff by telling them, inter alia, of a nonexistent security breach. That count also alleged that the plaintiff tortiously interfered with the contractual relations between "Guardian" and its employees when he coerced employees to leave "Guardian." The May 10, 2002 counterclaim again alleged that the plaintiff tortiously interfered with contractual relations when he persuaded customers to switch to his company because, inter alia, of a nonexistent security breach, and when he coerced employees to leave, but this time the allegations were made with respect to "Guardian Alarm." The tortious interference count of the May 25,

---

[12] The court was free not to apply § 52-577, the only statute of limitations cited in the motion in limine, to the admission of evidence relating to the CUTPA count because § 42-110g (f) governs such claims. At any rate, like the tortious interference count, the CUTPA count in the May 10, 2002 counterclaim relates back to the May 25, 2000 counterclaim, and the applicable statute of limitations is also three years.

2000 counterclaim focused on the plaintiff's actions "since February 1997." The May 10, 2002 counterclaim narrowed the scope of the plaintiff's alleged tortious interference to those actions that occurred after August 29, 1997, the date on which the sale of assets from Guardian Systems to Guardian Alarm was approved.

The question then becomes whether this change from "Guardian" to "Guardian Alarm" corrects a misnomer or substitutes a new party. "An amended complaint, if permitted, relates back to and is treated as filed at the time of the original complaint unless it alleges a new cause of action. . . . While an amendment that corrects a minor defect relates back to the date of the original complaint, one stating a separate cause of action is barred by the statute of limitations. Further, if the amendment is deemed to be a substitution or entire change of a party, it will not be permitted. . . . If the amendment does not affect the identity of the party sought to be described in the complaint, but merely corrects the description of that party, the amendment will be allowed. . . . The test applied in order to determine whether an amendment is correcting a misnomer as opposed to substituting a new party or claim requires consideration of the following: (1) whether the [opposing party] had notice of institution of the action; (2) whether the [opposing party] knew he was a proper party; and (3) whether the [opposing party] was prejudiced or misled in any way." (Citations omitted; internal quotation marks omitted.) *Kaye* v. *Manchester*, 20 Conn. App. 439, 444, 568 A.2d 459 (1990).

This test is sufficiently satisfied. The plaintiff clearly had notice that a counterclaim alleging tortious interference was being alleged against him. The plaintiff was not prejudiced because the basis for the claim was not new. It was clear from the context that the term "Guardian" as used in the May 25, 2000 counterclaim referred to the same "Guardian" that was referenced

in the complaint. The plaintiff alleged in his complaint that Guardian Systems had used the name Guardian Alarm, Guardian Alarm Services and variants thereof, and that on August 29, 1997, Guardian Systems sold its assets to Guardian Alarm. The May 25, 2000 counterclaim, then, implicitly refers to Guardian Systems and its successor(s). The May 10, 2002 counterclaim refers only to the successor Guardian Alarm. The count of the revised counterclaim alleging tortious interference does not allege a new cause of action and merely corrects a misnomer. Accordingly, that count of the May 10, 2002 counterclaim relates back to the May 25, 2000 counterclaim. The court instructed the jury that as to Guardian Alarm's counterclaim, it could consider only the plaintiff's actions that occurred on or after August 29, 1997, the date of Guardian Alarm's inception. Such actions necessarily would have occurred within three years of May 25, 2000.

The court did not abuse its discretion in denying the plaintiff's motion in limine to preclude the admission of evidence predating May 10, 1999, with respect to the count of Guardian Alarm's counterclaim alleging unjust enrichment. "A right of recovery under the doctrine of unjust enrichment is essentially equitable . . . ." (Internal quotation marks omitted.) *Vertex, Inc.* v. *Waterbury*, supra, 278 Conn. 573. "[I]n an equitable proceeding, a court may provide a remedy even though the governing statute of limitations has expired, just as it has discretion to dismiss for laches an action initiated within the period of the statute. . . . Although courts in equitable proceedings often look by analogy to the statute of limitations to determine whether, in the interests of justice, a particular action should be heard, they are by no means obliged to adhere to those time limitations." (Citations omitted.) *Dunham* v. *Dunham*, 204 Conn. 303, 326–27, 528 A.2d 1123 (1987), overruled in part on other grounds by *Santopietro* v. *New Haven*,

239 Conn. 207, 213 n.8, 682 A.2d 106 (1996). The court, exercising its equitable powers, was not bound to apply § 52-577 to the unjust enrichment count.[13] See id.

For the foregoing reasons, the court did not abuse its discretion in denying the plaintiff's motion in limine.

D

Following trial, Guardian Alarm moved for punitive damages and for an award of attorney's fees, pursuant to §§ 42-110b et seq. and 42-110g (d), respectively, of CUTPA. The court granted the motions and awarded $25,000 in punitive damages and $42,539.18 in attorney's fees and costs. The plaintiff claims that the court abused its discretion in granting Guardian Alarm's motions for punitive damages and for attorney's fees. We disagree.

"CUTPA allows for the recovery of punitive damages; see General Statutes § 42-110g (a); and attorney's fees. See General Statutes § 42-110g (d)." *Stearns & Wheeler* v. *Kowalsky Bros.*, 289 Conn. 1, 9 n.12, 955 A.2d 538 (2008). "Awarding punitive damages and attorney's fees under CUTPA is discretionary; General Statutes § 42-110g (a) and (d) . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done." (Internal quotation marks omitted.)

---

[13] Additionally, to the extent that General Statutes § 52-577 could be deemed to apply by analogy, the unjust enrichment count is not barred by the statute of limitations under the relation back doctrine. This count specifically incorporated the same factual allegations as stated in the counts of the May 10, 2002 counterclaim alleging tortious interference and breach of fiduciary duty, both of which were alleged in the May 25, 2000 counterclaim, i.e., that the plaintiff used confidential information to contact and to persuade customers to switch to United Alarm. The allegations of unjust enrichment did not inject "different sets of circumstances and depend on different facts . . . but rather amplified and expanded upon the previous allegations by setting forth alternate theories of liability." (Citations omitted; internal quotation marks omitted.) *Gurliacci* v. *Mayer*, 218 Conn. 531, 549, 590 A.2d 914 (1991).

*Nielsen* v. *Wisniewski*, 32 Conn. App. 133, 138, 628 A.2d 25 (1993).

1

We first address the plaintiff's claim that the court abused its discretion in granting Guardian Alarm's motion for punitive damages under CUTPA. He argues that the evidence presented did not reveal a reckless indifference on his part to the rights of Guardian Alarm and that there was no evidence that his conduct was wanton. We disagree.

"In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights. . . . In fact, the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence." (Citation omitted.) *Venturi* v. *Savitt, Inc.*, 191 Conn. 588, 592, 468 A.2d 933 (1983).

The court did not abuse its discretion in granting Guardian Alarm's motion for punitive damages. The court reasonably could have found that the evidence revealed a reckless indifference on the part of the plaintiff to the rights of Guardian Alarm or an intentional and wanton violation of those rights. There was evidence from which the court reasonably could have found that the plaintiff induced customers of Guardian Alarm to switch their contracts to United Alarm. The plaintiff testified that he did whatever he needed to do to get accounts. He further testified that he had information regarding most of Guardian Alarm's customers on his home computer and could remotely access customer accounts. Using that information, he approached Guardian Alarm customers and solicited them to switch to United Alarm. He offered Guardian Alarm customers reduced rates to switch. He testified that he took only a "couple" of accounts before August

1997, but that by "the end of 1997," he decided not to wait any longer to settle his differences with Jerome Terracino, and he began to escalate his efforts to solicit and to switch customers accounts from Guardian Alarm to United Alarm. There also was evidence from which the court could have found that the plaintiff told customers about nonexistent security issues. From this evidence, the court reasonably could have determined that an award of punitive damages was proper.

### 2

The plaintiff next claims that the court abused its discretion in awarding Guardian Alarm attorney's fees under CUTPA. We disagree.

As noted, "[a]warding . . . attorney's fees under CUTPA is discretionary . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done." (Citation omitted; internal quotation marks omitted.) *Nielsen* v. *Wisniewski*, supra, 32 Conn. App. 138. There being no indication of either in this case, we conclude that it was within the discretion of the court to grant Guardian Alarm's motion.

### II

### AC 28442

In its appeal, Guardian Alarm claims that the court improperly denied its motion for a constructive trust. We disagree.

In October, 2005, following trial, Guardian Alarm filed a motion for an order imposing a constructive trust. Guardian Alarm sought to have the court impose on the plaintiff and United Alarm a constructive trust over those alarm monitoring accounts that were under the control of the plaintiff and United Alarm but were formerly accounts of Guardian Alarm. The court denied the

motion. It reasoned, inter alia, that it lacked personal jurisdiction to impose a constructive trust. It reasoned that United Alarm had not been made a party to the action, and, accordingly, it lacked jurisdiction to impose a constructive trust over assets that were in the legal name of United Alarm.[14]

"A court's determination of whether to impose a constructive trust must stand unless it is clearly erroneous or involves an abuse of discretion. . . . This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." (Internal quotation marks omitted.) *Garrigus* v. *Viarengo*, 112 Conn. App. 655, 671–72, 963 A.2d 1065 (2009). "A challenge to the jurisdiction of the court presents a question of law. . . . Our review of the court's legal conclusion is, therefore, plenary. . . . [T]he Superior Court . . . may exercise jurisdiction over a person only if that person has been properly served with process, has consented to the jurisdiction of the court or has waived any objection to the court's exercise of personal jurisdiction." (Internal quotation marks omitted.) *Angiolillo* v. *Buckmiller*, 102 Conn. App. 697, 713, 927 A.2d 312, cert. denied, 284 Conn. 927, 934 A.2d 243 (2007).

Guardian Alarm argues that the court improperly determined that it lacked personal jurisdiction over United Alarm. It argues that the court has jurisdiction over United Alarm because it has jurisdiction over the

---

[14] The additional reasons given by the court for denying Guardian Alarm's motion for a constructive trust were that (1) Guardian Alarm did not prove that a confidential relationship between the plaintiff and Guardian Alarm existed and (2) imposing a constructive trust would permit Guardian Alarm to receive double recovery. Guardian Alarm also claims that these conclusions of the court are improper. We need not address these additional claims because we conclude that the court did not abuse its discretion in denying the motion for a constructive trust on the ground that it lacked personal jurisdiction over United Alarm.

plaintiff, who is a party to the action, who had control over the accounts maintained by United Alarm and, as its president, was capable of doing whatever was necessary to return the wrongfully taken property to Guardian Alarm. We are not persuaded. United Alarm is not a party to the action, and the court has no jurisdiction to render a judgment against a person or entity that is not before it. It is axiomatic that a court does not have personal jurisdiction over a nonparty. "If a court lacks jurisdiction over a person [or entity], the court has no authority to award a judgment against that person [or entity]." *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, 227 Conn. 175, 196, 629 A.2d 1116 (1993).

The judgment is affirmed.

In this opinion the other judges concurred.